Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff is a Maryland corporation engaged in the contracting business. An act of Congress approved June 29, 1922 (42 Stat. 709), authorized the expenditure of a specified appropriation under the direction of the Secretary of War for the construction of a water supply conduit for the District of Columbia. The conduit for which plans and specifications were prepared was to extend from above Great Falls, Maryland, to a designated point near the influent chamber to Dalecarlia Beservoir, a distance of nine miles.
Public advertisement was made, soliciting proposals to construct the conduit in accord with the plans and specifications, and the plaintiff’s bid therefor was accepted. The contracts, three in number, identified as division contracts 1, 2, and 3, were entered into on July 26, 1922, formally approved on July 28, 1922, and plaintiff without delay proceeded with the contract work.
During the course of performance the plaintiff encountered difficulties and delays, as well as differences of opinion as to the scope of the work exacted under the contracts, and this suit is for the recovery of a judgment for $48,926.43, alleged damages suffered.
ITEM 1. DELATS IN THE COMPLETION OP THE WORK
The time limit for the completion of each of the three contracts was fixed for June 30, 1924. Article 5 of each contract provided that in the event of delays chargeable to the defendant the plaintiff should have a corresponding extension of time free from the additional cost of superintendence and inspection incurred by reason of such delays. If, however, the plaintiff without the intervention of excusable causes under the terms of the contracts delayed performance, the additional cost of superintendence and inspection was to be chargeable to it, and withheld from sums due under the contract.
*362 Performance of this contract was not completed until November 80, 1924, a conceded delay of 153 calendar days. The Chief of Engineers approved an extension of 90 days as chargeable to the defendant, and for this period of time remitted all costs of superintendence and inspection. For 68 days’ delay the plaintiff was held responsible and the additional costs assessed against it. The sum of $1,045.35 is admittedly due under this item. The plaintiff claims $1,367.08. The defendant tendered payment of $1,045.35 but the plaintiff declined the same for fear its right to sue for the full amount claimed might be jeopardized.
Article 5 in making extensive provisions with respect to the causes and responsibilities for delays contains this usual clause: “ The findings of the contracting officer, approved by the Chief of Engineers, shall be accepted by the parties hereto as final.” The plaintiff presented to the contracting officer, its claims for extensions of time and he in turn passed them on with a favorable recommendation to the Chief of Engineers, where they received consideration, as noted above.
It has been held repeatedly by this court and the Supreme Court that where the parties to a contract stipulate as to the finality of the findings of a named official, the same may not be challenged except for fraud or the establishment of such gross error as would warrant an implication of fraud or bad faith. United States v. Gleason, 175 U.S. 588; Penn Bridge Co. v. United States, 59 C.Cls. 897.
The plaintiff, recognizing the above rule, challenges the findings of the Chief of Engineers with respect to all his findings as to delays, both as to this and contracts 2 and 3, on the grounds of gross error and mistakes. It is first contended that the delay of 153 days in completing contract no. 1 is directly ascribable to the defendant’s mistake in estimating the quantity of material to be excavated, an alleged mistake which resulted in imposing upon plaintiff the excavation of 25% more material than the estimates disclosed. It is true that the quantity of material excavated greatly exceeded the estimates, and the contracting officer recom *363 mended to the Chief of Engineers that the plaintiff be allowed 140 days’ extension of time, but the court may not upon these facts set aside the final decision of the Chief of Engineers upon the grounds of gross error. ,
Paragraph 20 of the specifications is as follows:
“ 20. Geological formation. — Borings have been taken along the' line of the work, and the formation, as indicated by these borings, has been shown on the drawings. '
“ Bidders will be permitted to examine such data as have been collected by the contracting officer regarding the formation along the line of the work. They are expected, however, to determine for themselvés the nature of the formation, to check the data collected by the contracting officer,- and to assure themselves regarding' the formation through which their work will be carried, and any discrepancies between the nature of the formation as it actually exists and as indicated by the data given by the contracting officer will not be recognized as valid grounds for any claim against the United States for compensation over and above the price named in their bids.”
This paragraph contains express reference to at least four specific contractual facts, viz, that borings had been taken. and the formation disclosed indicated on the drawings, and that bidders would be permitted to examine said data. The next two provisions, in language which may not be misunderstood, warn the contractor to check the accuracy of said data, “ assure themselves regarding the formation through which their work will be carried ”, and state that the United States would not be responsible for any discrepancies as to actual and disclosed formations. The plaintiff, in the face of the provisions of this paragraph, made no independent examination, and no charge is preferred that the borings made by the defendant did not disclose the formation as shown thereby. The charge is that both the character and quantity of the material to be excavated were in certain portions of the line of work at variance with what the borings showed at the points where they were made.
The reason the plaintiff assigns for failing to make its own investigation is that the time allotted for filing bids subsequent to issuance of the proposals was not sufficient to allow it to be done. The plaintiff had 30 days in which to investigate conditions. Aside from this, however, the *364 court may not disregard a plain provision of a contract which expressly excludes even a suggestion of a warranty that the defendant’s data as to earth formations are to be relied upon. The defendant ascertained the data and predicated its estimates by approved and recognized methods, and if in certain portions of the line of excavation, which had not been explored by either the defendant or plaintiff, the condition indicated by the borings at other points did not obtain, assuredly the defendant is not to be charged with gross error in predicating its estimates upon data actually obtained and which were made available to the plaintiff before it bid on the work.
The case of Sheridan-Kirk Contract Co. v. United States, 53 C.Cls. 82, is inapposite. This case followed the decisions of the Supreme Court in the cases of Hollerbach v. United States, 233 U.S. 165, and Christie v. United States, 237 U.S. 234. The memorandum opinion so states. There is a vast difference between reliance upon borings proven deceptive and upon borings not deceptive, but which simply fail to indicate throughout all the line of work what manner and quantity of material are to be encountered.
Obviously a divergence in quantity and character of material was to be anticipated; strict accuracy was an impossibility. Both parties to the contract knew this; the defendant declined to accept responsibility for quantity and character, and the plaintiff executed the contract under these conditions. Paragraph 7 of the specifications is as follows:
“ 7. Quantities approximate. — It is understood and agreed that the quantities given in these specifications are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. No allowance will be made for the failure of a bidder or of the contractor to estimate correctly the difficulties attending the execution of the work.”
This paragraph contemplated the situation which subsequently developed.
The plaintiff is entitled to recover $1,045.35 under this item, and this sum will be included in the judgment.
*365 DELAYS IN PLACING CONCRETE
In December 1922 the plaintiff asked to proceed with •excavation work in advance of concreting. An assertion was made that because of rock formations along the line of excavation it was perfectly feasible to excavate the conduit trench much in advance of concreting the excavation when the same was made. The request as noted was made in a winter month, and the contracting officer, in whose opinion the Chief of Engineers later concurred, declined to permit the plaintiff to proceed. Plaintiff claims a delay of 54 days due to this refusal.
Aside from the rule of law as to the finality of the decision of the Chief of Engineers under the contract, the plaintiff’s contention is without merit in fact. The plaintiff was under contractual obligations to so conduct its contract work as not to injure the existing conduit thirty feet distant, upon which the city of Washington depended for its water supply. The contracting officer, exercising reasonable, prudent, and sensible judgment, declined to permit an open trench in the ground to exist during the winter months, and the fact that after events and the weather conditions would or might have justified a different holding in no sense characterizes the action of the officer as a mistake, much less a gross one.
FREIGHT EMBARGO APPLICABLE TO CONTRACTS NOS. 1, 2, AND 3
The work specified to be done was concededly what is technically known as “ the cut and cover aqueduct section made of concrete.” In order to perform the contract in this manner, it was immediately determined that steel forms were essential to attain the shape specified for the use of concrete. The plaintiff on August 4, 19, and 22, 1922, following the approval of the contract on July 28,1922, placed orders for the forms with the Blaw-Knox Company, of Pittsburgh, Pa., and delivery was to be made within thirty days therefrom. A railroad embargo prevented the Pittsburgh company from delivering the forms in accord with their contracts. The plaintiff did not receive the first carload of forms until October 27, 1922, and the remaining ones *366 arrived late in the following December. The failure to receive the forms delayed the plaintiff, for the reason that work during the winter was impossible and the forms were not available until the spring of 1923.
The defendant recognized the handicap suffered by the plaintiff in this respect and through proper channels interposed to have the embargo- lifted, and it was with the assistance of the defendant finally lifted. A freight embargo, preventing shipments of the steel out of which the forms had to be made, falls, we think, within that clause of article 5 of the contract which excuses the contractor for delays due to “ unforeseeable causes.” It was not within the power of the plaintiff to prevent it, and it was not an act the plaintiff had reasonable cause to anticipate. The embargo- was established by orders of the Interstate Commerce Commission and effectually precluded the plaintiff from obtaining the forms expeditiously. That delays ensued because of the situation may not be controverted.
We think the plaintiff protected itself against liability for this character of delay. The World War was over and the extraordinary and essential governmental acts for its prosecution were not to be assumed as continuing to exist, and seemingly this act of the defendant falls within the category of an unforeseen and unforeseeable cause. Chicago, Milwaukee & St. Paul Ry. Co. v. Hoyt, 149 U.S. 1, 16.
The plaintiff’s application to the contracting officer for extensions of time due to this cause was received, and without any recommendation transmitted to the Chief of Engineers, who declined to approve the same. No reason of record appears for so doing, and while perhaps a reason for nonap-proval is not essential, the fact of its omission leaves to the court resort to the record in the case, and from it we believe the plaintiff was entitled to a remission of the costs of superintendence and inspection due to this delay. The plaintiff is not seeking damages for the same, and it was gross error to charge the sums withheld in a case where the plaintiff in ho way contributed to the delay and the same was not its fault. Standard Dredging Co. v. United States, 71 C.Cls. 218.
*367 DIVISION CONTRACT NO. 2, DELAYS
The defendant admits tbat plaintiff is entitled to a judgment of $1,503.99 illegally withheld for costs of superintendence and inspection for a delay caused by heavy rains and freshets. The contract by express terms excused a delay attributable to this cause.
Plaintiff contends that an arbitrary and gross error of the contracting officer, approved by the Chief of Engineers, delayed work under the above contract for 60 days by requiring the Conduit Hoad to be kept open at two points where the new conduit in process of construction crossed the established Conduit Road.
The specifications provided in this respect as follows:
“ The contractor will not be allowed to close the Conduit Road to traffic at any point without the approval of the con-tracing officer, and a suitable diversion or detour satisfactory to the contracting officer shall be provided and maintained by the contractor during the period of each approved closure of the Conduit Road.”
The defendant offered no testimony as to this item. The plaintiff produced one witness and upon his testimony relies to establish its claim. Certain it was, for the contract so stated, that the matter of closing Conduit Road and providing a detour was one left to the discretion and judgment of the contracting officer. Whatever period of time was consumed in observing this provision of the contract was part of the plaintiff’s obligation, and the specific undertaking was one of sufficient latitude to allow the appearance of an honest mistake. Plaintiff was asserting a right to close the road and enforce a detour over nearby country roads. The contracting officer did not so construe the contract. On the contrary, he at first insisted that plaintiff provide and maintain a suitable detour, finally acquiescing in the use of a road some two miles north of Conduit Road. We think the contracting officer was warrented in holding as he did, and that the proof in any event falls short of establishing gross error. Closing Conduit Road to traffic and diverting the same over a distant thoroughfare were not contemplated at *368 the time the contract was executed. The parties, with knowledge of the situation, stipulated a detour in the event of closing the road, which would minimize the inconvenience to the public and necessary travelers thereon, and what finally transpired was in the end as beneficial to the contractor as it was expensive. The plaintiff is entitled to have included in the judgment the sum of $1,503.99, admittedly due.
DIVISION CONTRACT NO. 3, DELAYS
The defendant admits that plaintiff is entitled to a judgment for $5,703.79 withheld from it for delays. The Chief of Engineers approved the plaintiff’s request for remission of costs of superintendence and inspection for delays due to the performance of extra work due to changes, loss of time through excessive rainfalls, and on account of a slide occurring along the line of construction.
The plaintiff, again resorting to article 5 of the contract, seeks to charge the defendant with a delay of 30 days upon an allegation that the defendant did not expeditiously procure title to a certain portion of land included within the survey of the line of work and through which the conduit was to pass. It is not denied that at the time the contract work was commenced the United States did not have title to this tract of land and that title was procured later on. Plaintiff says failure to procure title resulted in a serious interruption of the continuity of its operations and compelled it to do work on the west side of the land upon which it could not enter, later returning to this section and completing excavation and concrete work there, which could have been completed at an earlier date, and thus escape the extra cost of superintendence and inspection.
The plaintiff predicates the right of recovery upon a statement that the ruling of the Chief of Engineers was arbitrary and grossly erroneous. The record supplies no facts warranting such a contention. The plaintiff submitted no request to the contracting officer for allowance of delays, and the whole matter was allowed to repose until at least the date of final settlement. Paragraph 38 of the specifications details a method of procedure essential to be *369 complied with, in order to invoke the provisions of the contract with respect to losses of this character.
During the progress of the work the plaintiff encountered subterranean springs between culverts identified as numbers 18 and 19. This excess water made it difficult to dry out the foundation so as to permit concrete to be poured. The plaintiff lost an appeal to the Chief of Engineers for the allowance of a 30 days’ delay attributable to this cause. The Chief of Engineers decided as follows:
“ This cause of delay is not analogous to any enumerated in article 5 of the contract, nor is there found a provision in the specifications that amounts to a warranty by the Government that no unusual conditions due to springs might be encountered, or that would shift the burden from the contractor to the United States, if unusually wet conditions were found at any point along a stretch of over eight miles. As presented this ground for additional time is not regarded as meritorious.”
We think the decision was right. The existing condition was not an unforeseeable one under the contract.
RESPONSIBILITY UNDER CONTRACT NO. 2 POR THE BREAK IN OLD CONDUIT
The determination of responsibility for the damages occasioned by the foregoing accident exacts citation of numerous provisions of the contract. Paragraph 59 of the specifications is in part as follows:
“ Sheeting and bracing. — Sheeting and bracing shall be provided and placed to support the sides of excavations in open cuts wherever they are considered necessary and required by the contracting officer for the proper protection of either the new or present old work. This work shall be done in a safe, satisfactory, and thoroughly workmanlike manner. In placing the sheeting and bracing, a proper clearance shall be left for placing the forms for construction purposes. All sheeting and bracing shall be removed before the back filling is done whenever it is practicable to do so.
“ The contractor shall assume all responsibility for any damage that may be caused either through any weakness in such sheeting and bracing placed by him or by his failure *370 to place such sheeting and bracing, and he shall promptly repair such damage at his own expense.”
It is to be especially noted that as a protective measure to both the new and old work the plaintiff was to place sheeting and bracing when required by the contracting officer, and to assume all responsibility for damage due to faulty sheeting and bracing or the absence of necessary sheeting and bracing.
Paragraph 22 of the specifications provides in part as follows:
“ Proxibiitt op existing strugtures. — The line of the new work is generally about 30 feet from the existing Washington Aqueduct which is the only water supply line of the city of Washington and must be kept in continuous service throughout the period of construction of the new line.
" The contractor shall at all times be responsible for conducting his work in such a manner as to insure the safety of all existing structures which are essential for carrying the water supply and their uninterrupted use by the United States. If at any time any of the existing structures are injured or-rendered unsafe for use, the contractor shall, at his own expense, immediately and thoroughly repair ail damages to the satisfaction of the contracting officer. The telephone lines, road surface, and guard fences, however, will be repaired or removed where and when necessary by the United States.”
Paragraph 42 is in the following language:
. “ Emergencies. — It is possible that emergencies may arise during the progress of the work which may require special treatment or make advisable extra shifts of men to continue the work for 16 or even 24 hours per day. These emergencies may be caused by damage to the nearby existing structures or by accidents or leakage. In case such emergencies arise the contractor shall hold himself in readiness to make all necessary repairs promptly in order that there may be no serious interference with the water supply of the city or with traffic on the Conduit Road.”
Paragraph 45 is as follows:
“ Contractor to repair damages. — In case any direct or indirect damage or injury is done to any private or public property by or because of the work or in consequence of any act 'or omission on the part of the contractor or his em *371 ployees, he shall, at his own expense, restore such property to a condition equal to that existing before such damage or injury was done by repairing, rebuilding or otherwise, as may be required by the contracting officer. In case of failure on the part of the contractor to promptly restore such property or make good such damage or injury the contracting officer may upon 48 hours’ written notice, proceed to repair, rebuild, or otherwise restore such property as may be necessary, and the cost thereof shall be deducted from the amount due or to become due the contractor.”
Obviously, the specifications quoted were intended to and do plainly cover the contractual obligations assumed with respect to both the new and old conduit. Interruption of the water supply for the District of Columbia was a contingency against which the defendant was providing with detailed care, not only as to its happening but to expeditious repair in the event it occurred. The plaintiff was well aware of the constant menace which the old conduit offered to its operations, and the prime necessity of guarding against it. It is true that sheeting and bracing were exacted to forestall, among other things, what happened, and if this were the limit of the plaintiff’s obligations the contention advanced would be meritorious; but in addition to this prescribed method as a preventive, the plaintiff, despite the same assumed all responsibility for either the weakness or absence of sheeting and bracing. This convenant, as we view it, was comprehensive; it embraced the necessity of protective elements sufficient within themselves to protect the stability of the old conduit in place, notwithstanding approval by the contracting officer as given to placed sheeting. In other words, the covenant exacted sheeting and bracing of sufficient strength to prevent precisely what happened. The plaintiff assumed responsibility for the weakness of the same under any conditions. The sheeting and bracing were to serve a twofold purpose — protect contract operations and the old conduit, and if it was weak in either respect the plaintiff was to assume liability. There could be no other purpose in inserting the covenant if this were not true.
*372 The defendant relieved itself from liability in the event of failure in this respect, although the contracting officer might approve the same.
We assume that the plaintiff does not contest liability for the expense of repairs to the old conduit if the facts bring the transaction within the contract provisions. Therefore, the remaining issue is one of fact. Plaintiff insists that the break in the old conduit was due to faulty construction, rather than the removal of lateral support afforded the conduit prior to excavation for the new one. To sustain the contention the record is cited to the effect that at the point of breakage the brick walls of the old conduit were not of the same dimensions as at other places, and that excessive rainfalls had so liquefied the surrounding land surfaces that landslides were to be attributed to this cause. The fact that the break occurred at the top and not at the bottom of the old conduit is confidently relied upon as conclusive of the fact that plaintiff’s operations did not cause it.
That the defendant was not responsible for the break is evident. Specification 22 (supra) sets forth the plaintiff’s responsibility for the safety of the old conduit. If it had been originally constructed upon a faulty basis it was nevertheless in location and functioning. The plaintiff knew this and assumed the hazard. It was not a matter of carelessness or negligence in the construction of the new conduit but an undertaking positive in terms and extent. The old conduit was to be kept free from the apparent dangers of extensive excavation and contract work at no greater distance from it than 30 feet, and we may not rest a money judgment upon the hypothetical basis that the cause of the event was attributable to the facts cited, in the face of the indisputable fact that the break did occur at the point where excavation had been made, and under circumstances requiring positive, clear, and preponderating proof that extraneous and not contractual operations brought it about. It requires a greater degree of proof than has been furnished to establish the fact that the break would have occurred even though the excavation had not been there. Significant in this respect is the proven fact that at no other point in a line of *373 construction nine miles in length had breaks occurred, although it was known that at other points in the old conduit its walls were of the same dimensions as here. Day v. United States, 245 U.S. 159.
The remaining items of claim alleged as a result of the break in the old conduit are- not allowable for the reasons stated above.
MISTAKE, OP GOVERNMENT ENGINEERS IN SETTING INACCURATE GRADE STAKES POR WORK UNDER CONTRACT NO. 2
Paragraph 31 of the specifications as to lines and grades is as follows:
“ Lines and grades. — All lines and grades will be given by the contracting officer or his representatives, but the contractor shall provide such material and give such assistance as may be required, and the marks given shall be carefully preserved. The contractor shall keep the contracting officer informed a reasonable time in advance as to time and places in which he intends to do work in order that lines and grades may be furnished and necessary measurements for record and payments may be made with a minimum inconvenience to the contracting officer and the contractor.”
Paragraph 57 of the specifications provides in part as follows:
“ Excavation will be paid for by the cubic yard as classified by the contracting officer and as measured in the cut between the limit lines determined by him. Payment will not be made for excavation outside the excavation lines shown on the drawings.
* * * Hi ❖ * *
“ Immediately before placing the concrete invert of the conduit and other structures, the ground for its foundation shall be carefully graded by hand to the exact lines and grades shown on the drawings or required by the contracting officer.”
The lines and grades for open-cut excavation were given to the plaintiff by the contracting officer and plaintiff was obligated to follow them; in fact, the given lines and grades formed the basis for pay for concrete work. The fact is not disputed that the plaintiff followed the lines and *374 grades given, and no differences arose until plaintiff’s subcontractor, when within sixty feet of completing the concrete work between stations 319 and 247, sought to discover the reason for the use of more cement than had been estimated upon for this section of the work. Seventy-two hundred (7,200) feet of the excavation had been cemented when a representative of the subcontractor by actual measurement discovered an error of 8 inches in the depth of the excavation in the sixty-foot trench not cemented due to erroneous lines and grades given by the contracting officer. The contracting officer concedes the error.
The issue presented revolves around the one fact as to whether this error extended throughout the 7,200 feet which had been concreted in accord with the lines and stakes theretofore given, and the determination of which was only possible by a comparison of the amount of cement required under exact and proper lines and grades and the amount actually put into the excavation. If the error existed as to the 7,200 feet the plaintiff alleges a claim for $6,584.70, the cost of the extra cement used and labor involved in pouring it. The burden of establishing the existence of the error is upon the plaintiff. The obstacle preventing positive proof is found in the fact that no way prevailed for accurate measurement of the excavation concreted so as to determine the given lines and grades; the work had been finished, estimates made of its extent, and payments made, based on these estimates.
The defendant’s officials in immediate charge of the work while, as before observed, admitting error as to sixty feet of the excavation, cite contemporaneous records which do not disclose an abnormal quantity of cement used in the concreting of the 7,200 feet and, while this testimony may not be conclusive as to the actual quantity of cement consumed, it is under the circumstances the only available evidence coincident with the progress of the work upon which any degree of reliance may be placed to establish the fact.
The court is not at liberty to consider certain that which under the facts is manifestly uncertain until the uncertainty is absolutely removed, or proof adduced sufficiently explicit *375 to warrant the court in reaching a conclusion that the loss claimed has been established upon a reasonable and logical basis. To do this it is essential that the element of speculation be removed and sound facts obtain upon which a judgment may reasonably be predicated. In this instance the proof is insufficient; the fact is not established. Electric Boat Co. v. United States, 66 C.Cls. 333.
LOSS DUE TO A SLIDE EOLLOWING MISLOCATION OF THE LINE OF OPERATIONS BY THE DEFENDANT
The parties stipulated the facts set out in finding XXI. We adhere to the stipulation, notwithstanding its prolixity. The finding could have been very much abbreviated. The inexcusable error made by the defendant, and persisted in after the first notification of it, in mislocating the line of excavation caused the plaintiff serious loss. The error was so gross that if the plaintiff had been forced to observe the mislocated line of operations the old conduit located within seventeen feet thereof would have to have been intersected at one point. Each of defendant’s officials, including the Chief of Engineers, empowered under the contract to pass upon, determine, and allow a loss due to the error, approved plaintiff’s claim and recommended its payment, and by so doing admitted the cause of the serious slide and the disastrous consequences to the plaintiff, as well as the extent of the damages suffered. Paragraphs 37 and 38 of the specifications were complied with.
The work for which pay is asked was not extra within the meaning of the contract provisions pertinent to extra work. It was additional work and labor mistakenly exacted of the plaintiff by the superior contracting. officials, under the.contract.' What was done by the plaintiff should never have been exacted of it, and the burden imposed was. one that added to the expense of operations over and above what they Avould.have been if correct lines and grades had. obtained.'- Paragraph 38 of the specifications is positive- and was inserted in the contract to cover such an eventuality.. The possibility of its happening was anticipated by the-parties to the contract. The work to be performed was- *376 extensive and of great importance. The specifications contain eighty-two paragraphs and the contract nineteen articles, the interpretation of which was not only reposed in the Government officials, but the positive duties they were to perform were likewise set out. The plaintiff possessed no authority to fix lines and grades for the work, and if a serious error, later discovered, compelled the plaintiff to do work which otherwise would not have to be done, this loss should not fall upon it.
Where under a construction contract the Government officials, acting within the scope of their authority, make an honest but a serious mistake in the discharge of their duties which imposes upon the plaintiff a vast amount of additional work, and the contract specifies the manner in which a claim for damages under the circumstances shall be asserted, compliance therewith entitles the plaintiff to recover when the facts are established. The plaintiff will be awarded $7,403.22 under this item. Wyant v. United States, 46 C.Cls. 205; Moore v. United States, 46 C.Cls. 139; Horton v. United States, 58 C.Cls. 148; Spearin v. United States, 248 U.S. 132; Whitlock Coil Pipe Co. v. United States, 72 C.Cls. 473.
REMOVAL OF EXCESSIVE QUANTITY OF ROCK ALLEGED TO BE DUE TO ERRONEOUS DATA OF BORINGS IN CERTAIN SECTIONS OF OPERATIONS UNDER CONTRACT NO. 3
Finding XXII correctly exhibits the facts with respect to this item in suit. The record fails to establish the fact, and recovery is not allowable for the additional reason that paragraph 38 of the specifications was not observed by the plaintiff. Plumley v. United States, 226 U.S. 545; Pope v. United States, 76 C.Cls. 64; Griffiths Construction Co. v. United States, 74 C.Cls. 245.
A judgment of $27,396.10 will be awarded, based upon the following items, viz:
Division contract no. 1:
Conceded as due by defendant-$1,045.36
Delay due to freight embargo- 293.67
-?1,339.02
Division contract no. 2:
Conceded as due by defendant- 1, 503. 99
Delays due to freight embargo- 4, 866.84
6. 370. 83
*377 Division contract no. 3:
Conceded as due by defendant_$5, 703. 79
Delays due to freight embargo_ 6,489.24
Damages due to mislocation of lines of
operation_ 7,403.22
-$19,596.25
27,306.10
It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.