ALFREDO LUIS RÍOS, ETC., Petitioner, *v.* PUERTO RICO CEMENT CORPORATION ET AL., Respondents.

No. 1. Argued July 5, 1946.—Decided July 24, 1946.

E. *Campos del Toro, Attorney General,* and *Luis Venegas Ortiz* for petitioner, *Víctor M. Bosch* and *Francisco Colón Gordiani* for Union of Quarrymen, etc., respondent. *Enrique Cornier,* as *amicus curiae.*

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The petitioner, Alfredo Luis Ríos, worked for more than four years as an employee of the Puerto Rico Cement Corporation Plant and during all that time was a member of the "Union of Quarrymen, Operators, and other Employees of the Cement Industry," organized on April 20, 1941. On November 21, 1945, the petitioner was expelled from the union, on the ground that while being secretary of the same, he objected to the delivery of the sum of $500, made by the president, without the previous authorization from the members of the organization to the General Confederation of Labor of Puerto Rico, "Colón-Gordiany Division."

After the petitioner was expelled, the union demanded from the Puerto Rico Cement Corporation that the petitioner

be discharged from his employment, in accordance with the stipulations of the collective bargaining contract entered into between the union and the company on November 12, 1946, whereby it was agreed that "all the employees who are members of the Union on the date on which this agreement is signed, and all the new employees shall maintain their status as members of the Union as a condition of employment during the life of this agreement." (Section 5). The Puerto Rico Cement Corporation notified the petitioner that he would be suspended from employment and salary if he did not timely appeal to the Grievance and Adjustment Committee, established by the collective bargaining contract, and if he did so, he could continue in his employment until the committee should render a decision. On December 12, 1945, the petitioner appealed. The Grievance and Adjustment Committee constituted by two representatives of the union, two representatives of the employer, and a delegate from the Commissioner of Labor, after holding hearings with the appearance of all the parties concerned, on January 21, 1946, rendered the following arbitration award:

"The following was adopted by the subscribing majority:

"THIRD . We understand that the waiving of his rights, in spite of the timely explanations which the Committee made to the complainant, on more than one occasion, was virtually tantamount to not offering any defense, and on the contrary gave the respondent an ample opportunity to weaken the charges which were not heard, and therefore, not proved. From all of which it is inferred, that in accordance with the unusual manner in which the case was conducted by the complainant, the order approved by the majority, *reversing* the expulsion of Mr. Alfredo Luis Ríos as burner of the Puerto Rico Cement Corporation, lies. It was agreed, further, that the minority—in this case the two members of the Union—would explain its vote in writing which it did, and that the two representatives of the Company would do the same in their capacity as such, and also the fifth member as such.

"Adopted at San Juan, Puerto Rico, this 21st day of January, 1946.

"GRIEVANCE AND ADJUSTMENT COMMITTEE OF THE PUERTO RICO CEMENT CORPORATION AND THE UNION OF QUARRYMEN, OPERATORS, AND EMPLOYEES OF THE CEMENT INDUSTRY.

"Against the expulsion:

"1. José R. Benítez (sgd.)

"2. Luis V. Rodríguez (sgd.)

"3. Julio Machuca (sgd.)

"In favor:

"1. Francisco Ortega (sgd.)

"2. Julio Amaro (sgd.)"

In the petition for injunction filed in this court pursuant to the provision of subdivision 2(c), § 9, Act No. 130 of May 8, 1945, as amended by Act No. 6 of March 7, 1946, the petitioner alleges that the respondent union, in contravention of the decision rendered by the Grievance and Adjustment Committee, of the terms of the collective bargaining contract, and of the public policy established in the above-mentioned laws, has refused to reinstate the petitioner in its membership and has ratified his expulsion by a new resolution adopted on January 22, 1946, demanding from the employer the immediate suspension of the petitioner as an employee of the cement plant; that the respondent employer, acting at the request and instigation of the union, suspended the petitioner from employment and salary on January 28, 1946, and has refused and refuses to reinstate him in his employment; that the union and the employer have united to deprive the petitioner of his right to earn a living through his work and to deprive him of his property rights derived from the collective contract; that the acts of the respondents cause irreparable injury to the petitioner, who lacking another adequate legal remedy prays for an injunction by which it should be ordered: (1) that the respondents refrain from violating or continuing to violate the decision rendered by the Grievance and Adjustment Committee; (2) that the employer immediately reinstate the petitioner in his employment and pay

him the salaries he failed to receive while he was suspended from employment and salary; and (3) that the petitioner be immediately reinstated as a member of the union.

The Puerto Rico Cement Corporation answered the complaint alleging, in substance, that it could not comply with the decision of the Grievance and Adjustment Committee because the union refused to reinstate the petitioner as a member thereof; that if it had reinstated the petitioner, the defendant corporation would have incurred in a violation of § 5 of the collective agreement, which provides that all its employees shall maintain their status as members of the union as a condition of employment; and that the corporation is ready to reinsatte the petitioner in his employment as soon as this action does not involve a violation of the collective contract.

The respondent union set forth as a first defense that this Supreme Court lacked jurisdiction to take cognizance of this matter in the first instance, because the ordinary proceedings established by the laws in force had not been exhauted. The respondent union maintained that it is the Puerto Rico Labor Relations Board, created by the Puerto Rico Labor Relations Act (Act No. 130 of May 8, 1945, amended on March 7, 1946), the one with jurisdiction to entertain in the first instance all those controversies and questions which daily arise between workmen and employers; and that the intention of the lawmaker in creating this organism was that it would take cognizance of all the matters in the first instance.

The jurisdictional question set up by the respondent union lacks merit. Let us see.

The collective bargaining contract of November 12, 1945, compels the employees of the corporation that are members of the union to maintain their status as such, as a requisite or condition of employment, during the life of the contract. The company obligates itself to employ only members of the union in the positions specified in the agreement; and agrees,

in addition, to suspend from employment and salary any employee who does not become a member of the union within the term specified in paragraph VI of the contract, when the union so requests in writing.

By Article II of said collective contract there is established a Grievance and Adjustment Committee constituted by two representatives of the union, two representatives of the company and a fifth member designated by the Commissioner of Labor, to consider and decide by a majority vote the complaints, controversies, or questions that may arise among the contracting parties involving misconduct or the construction, carrying out, or violation of the agreement. Article II cited provides, in addition, the following:

"*Providing,* further, that in case an employee is suspended from membership in the Union, the employee or the company may submit the case to the Grievance and Adjustment Committee *for its final determination.*

"*The holding or decision of the Committee approved by a majority of three of its members shall be find and unappealable* . . . . Such holding or decision shall be immediately binding upon the parties, provided it is not in conflict with, or does not compel a party to violate or implies the violation by said party, of any statute of Puerto Rico which can not be waived by contract." (Italics ours.)

The Puerto Rico Labor Relations Board was created by § 3 of the Labor Relations Act. Said Board, under the Department of Labor, has power (*a*) to prevent any person from engaging in any of the unfair labor practices enumerated in § 8; (*b*) to conduct a preliminary investigation of all the charges and petitions filed before it, for the purpose of determining whether or not further proceedings shall be instituted and hearings held; (*c*) to obtain evidence, issue subpoenas, examine witnesses, and administer oaths in any matter which is under investigation.

Section 8 of the said Act defines as "Unfair Labor Practices," among others, the following:

"(1) It shall be an unfair labor practice for an employer acting indivdually or in concert with others:

"*      *      *      *      *      *      *

"(*f*) To violate the terms of a collective bargaining contract, *including an agreement to accept an arbitratrion award* whether the same is or is not included in a collective bargaining contract; etc.

"*      *      *      *      *      *      *

"(*i*) Fail to employ or reinstate to his former position, or, in the event of its nonexistence, to a substantially equivalent position, an employee who has been discharged in violation of Section 8(2) (*b*).

"*      *      *      *      *      *      *

"(2) It shall be an unfair labor practice for a labor organization acting individually or in concert with others:

"(*a*) To violate the terms of a collective bargaining contract *including an agreement to accept an arbitration award* whether the same is or is not included in a collective bargaining contract; etc..

"(*b*) To unjustifiably exclude or suspend from the membership of a labor organization any employee in a collective bargaining unit on whose behalf the labor organization has executed an all-union or maintenance of membership agreement."

Section 9 of the Act deals with the prevention of unfair labor practices and enumerates the cases which may be submitted to the Labor Relations Board for its action in the manner and for the purposes provided by the same Act. Section 9, just cited, provides in its paragraph 2, subdivision (*c*), the following:

"(*c*) In order to promote collective bargaining, the Board may, in the exercise of its discretion, aid in the enforcement of arbitration awards issued by competent arbitration agencies, whether designated according to the terms of any collective bargaining contract executed between an employer and a labor organization or by virtue of any agreement signed by a labor organization and an employer. Upon the issance of an arbitration award, the Board may give advice at the request of any party to such award or may, if requested to do so, file in the name of the party so requesting, the proper judicial proceeding in the Supreme Court of Puerto Rico to enforce such award or arbitration."

In the proceeding instituted in the instant case it is not sought to enforce or review any order of the Labor Relations

Board, for which the Supreme Court is granted jurisdiction by § 9, paragraph 2, subdivisons (a) and (b) of the Act. The petition filed by the Labor Relations Board at the request and in representation of laborer Alfredo Luis Ríos, has been set up pursuant to the provision of subdivision (c) of paragraph 2 of Article 9, supra, and therein is invoked the jurisdiction and power vested upon this court to enforce and make binding the arbitration award rendered on January 21, 1946, by the Grievance and Adjustment Committee, constituted in accordance with the terms of the collective agreement entered into between the Puerto Rico Cement Corporation and the union.

We are of the opinion, and so hold, that this court has jurisdiction to consider and decide whether the arbitration award entered in favor of petitioner should be enforced.

An arbitration award stands in a position very similar to that of a judicial judgment or decree. Ordinarily it may be impeached or set aside if there is any defect or insufficiency in the submission or award rendering it invalid, or when there has been a substantial and prejudicial departure from the rules governing proceedings by and before arbitrators. The courts are extremely reluctant to set aside an arbitration award, and they should not permit that the awards be impeached unless they are clearly subject to one of the above objections or there is alleged fraud, misconduct, or the commission of gross or prejudicial error [1] equivalent to a violation of the right to a due process of law.

Against the decision rendered in favor of the petitioner there has been no allegation of fraud, nor that there was any departure from the rules or procedure by the Grievance and Adjustment Committee. The only thing that has been alleged is that the Grievance and Adjustment Committee

[1] 6 C.J.S. §§ 102, 103, and 104; Bisnovich v. British American Assur. Co., 123 A. 339; Johns v. Security Ins. Co., 174 S.E. 215; Larson v. Nygaard, 180 N.W. 1002; Arundel Corp. v. U. S., 79 Ct. Cl. 343.

which renderd it acted without jurisdiction because said committee "can not entertain administrative matters of the union, as is the expulsion of one of its members."

The contention that the Grievance and Adjustment Committee acted without jurisdiction lacks merit. In the collective bargaining contract of November 12, 1945, denominated "collective," as stated in the same, "because it is bargained and signed by the representative of the majority of the workingmen in the name of all his fellow-workers," it was expressly stipulated that "in case an employee *is suspended by the Union,* the employee or the company may submit the case to the Grievance and Adjustment Committee for its final determination."

·When the petitioner was expelled from the union, he made use of his rights under the collective contract and resorted to the Grievance and Adjustment Committee, which was constituted pursuant to the terms of the contract. The union appeared at the hearings held by the committee and, as alleged in its answer, it submitted "through its representatives, the oral and documentary evidence which it deemed proper and material to the merits of the case." The union had its "day in court" and an ample opportunity to introduce evidence and convince the Grievance and Adjustment Committee that the expulsion of the petitioner was justified.

The arbitration award rendered in this case is valid and the respondent union, as well as the Puerto Rico Cement Corporation, under the express terms of the collective contract must abide by it.

██ It has been alleged that the respondent union is not bound to reinstate the petitioner in its membership because the Grievance and Adjustment Committee confined itself in its decision to reversing the expulsion of Alfredo Luis Ríos, as burner of the Puerto Rico Cement Corporation, and did not expressly order his reinstatement in the membership of the union. In our judgment, there is no merit in that contention

and it must be dismissed as a mere subterfuge to avoid complying with a decision which is as binding for the union as it is for the employer.

The Puerto Rico Cement Corporation did not act on its own initiative, or in an unjustified manner, when it suspended the petitioner from employment and salary. The expulsion of the petitioner from the union forced the corporation to suspend him from employment, as it was an express condition of the collective contract that all the employees of the cement plant "shall maintain their status as members of the union as a condition of employment." The reversal of the suspension of Alfredo Luis Ríos, as burner of the Puerto Rico Cement Corporation, is an implied acknowledgment that his expulsion from membership in the union was unjustified; and the order for his reinstatement in his employment carries with it his reinstatement in the membership of the union, since under the terms of the collective agreement, it is an essential condition for the workman to be able to work in the cement plant, that he be a member of the union.

The Puerto Rico Cement Corporation, upon learning of the decision rendered on January 21, 1946, refused to abide by it and on the 28th of that same month and year suspended the petitioner from employment and salary. Since it chose not to comply with the arbitration award and to abide by the agreement of January 22, 1946, by which the union ratified petitioner's expulsion and demanded that he be suspended from employment and salary, the corporation is now bound not only to reinstate the petitioner but also to "pay him the income which he would have normally received," in accordance with the stipulations of Article II of the collective contract.

For the reasons stated the petition should be sustained and judgment rendered in the following terms:

1. Ordering the Puerto Rico Cement Corporation to immediately reinstate the petitioner in the employment which he previously held in the Cement Plant, and to pay him the

456

wages which he would have received since January 28, 1946, up to the date on which he is reinstated in his employment.

2. Ordering the respondent labor union and its directors, officers, and members to immediately reinstate the petitioner Alfredo Luis Ríos in the membership of the union.