Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| HIGHER POWER ELECTRICAL, LLC; COBRA ACQUISITIONS, LLC; LION POWER SERVICES, LLC Y OTROS<br><br>*Peticionarios*<br><br><br>v.<br><br><br>MATTEW CALICE<br><br>*Recurrido* | KLCE202401053 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV02104 (803)<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Comparecen Higher Power Electrical, LLC, (Higher Power), Cobra Acquisitions LLC, Lion Power Services LLC y Mammoth Energy Services, Inc. (peticionarios), los cuales presentaron el recurso de epígrafe el 27 de septiembre de 2024. En este, solicitaron que revoquemos la Sentencia emitida y notificada el 24 de mayo de 2024[1], por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante esta, el foro recurrido desestimó la *Petición de Confirmación de Laudo de Arbitraje* por falta de jurisdicción y prescripción.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, **expedimos** el auto de *Certiorari,* **revocamos** la *Sentencia* recurrida y devolvemos el caso al TPI para la continuación de los procedimientos de acuerdo con esta *Sentencia.*

---

[1] Véase, Apéndice titulado *Sentencia* del recurso de *Petición de Certiorari,* págs. 155-157.

**I.**

La controversia argüida en el recurso de *certiorari* tuvo su origen en octubre de 2017, cuando Higher Power[2] contrató al señor Mattew Calice (señor Calice o recurrido) para realizar trabajos relacionados a la restauración de la infraestructura eléctrica de Puerto Rico, tras el paso de los huracanes Irma y María.

El 27 de octubre de 2017, el señor Calice suscribió un acuerdo de arbitraje (el acuerdo)[3] con Higher Power, al cual se le incorporaron las Reglas de Arbitraje Laboral de la American Arbitration Association (Reglas de la AAA). Así pues, las partes acordaron que, una vez se emitiera un laudo final, el árbitro quedaría privado de jurisdicción para revisar los méritos del laudo y la capacidad de anularlo recaería en un tribunal federal[4].

Allá para el 14 de agosto de 2019, el recurrido presentó una demanda de arbitraje[5] ante la American Arbitration Association (AAA) alegando violaciones de las secciones 207 y 216 (b) de la Fair Labor Standards Act del 1938 (FLSA)[6] y de las secciones 171, 250 *et seq* y 271 *et seq* del Puerto Rico Wage Payment Statute (PRWPS)[7]. Posteriormente, el señor Guillermo A. Nigaglioni (Árbitro) fue seleccionado para llevar a cabo el arbitraje.

---

[2] Higher Power, Lion Power (antes conocida como Cobra Energy LLC) y Cobra Acquisitions son empresas afiliadas y subsidiarias de Mammoth Energy Services Inc. Posterior a que los huracanes Irma y María impactaran a Puerto Rico en el 2017, Higher Power, la cual repara infraestructura de transmisión y distribución eléctrica, ayudó a restaurar la infraestructura eléctrica de Puerto Rico de conformidad con los contratos entre Cobra Acquisitions y la Autoridad de Energía Eléctrica de Puerto Rico.

[3] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit A: *Employee Handbook Acknowledgment, Arbitration Agreement and Waiver of Jury Trial* del recurso de *Petición de Certiorari*, pág. 16.

[4] Íd. I agree that any and all disputes arising out of or related to the employment relationship between the parties (including termination of employment) will be resolved by mandatory, binding arbitration pursuant to the Federal Arbitration Act and using the American Arbitration Association rules for the resolution employment disputes with the exception that the arbitration shall not have the right or authority to conduct any arbitration on a class, collective or representative basis. All arbitrations covered by this agreement shall be conducted as individual claims and each resolved in a single arbitration between the employee and company.

[5] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit B: *Arbitration Demand* del recurso de *Petición de Certiorari*, pág. 18.

[6] 29 USC sec. 203 *et seq.*

[7] 29 LPRA sec. 203 *et seq.*, sec. 250 *et seq.* y sec. 271 *et seq.*

Una vez comenzado el proceso, el arbitraje presentó contratiempos, debido a que el señor Calice no cooperaba con el recurrido para calendarizar su deposición. Al trascurrir más de un año, se logró la fecha de la toma de deposición. Sin embargo, el señor Calice la canceló posteriormente. Tras la falta de diligencia e inactividad del señor Calice, el 11 de agosto de 2022, los peticionarios solicitaron al Árbitro que desestimara las reclamaciones con perjuicio, por el craso incumplimiento[8]. El 15 de agosto de 2022, el Árbitro emitió una orden final para mostrar causa dentro de cinco días calendario, ordenándole al recurrido presentar su respuesta en cuanto a la solicitud de desestimación de los peticionarios[9]. Una vez más, el señor Calice no fue diligente y presentó su contención transcurrido el término de la fecha provista.

Así las cosas, **el 5 de octubre del 2022**[10], **la AAA emitió el *Laudo* desestimando con perjuicio las reclamaciones presentadas por el recurrido**[11]. El Árbitro concluyó que, negar la solicitud de desestimación de los peticionarios y permitir que las reclamaciones continuaran, resultaría en un manejo desinteresado del caso por del señor Calice, lo que operaría en contra de los intereses del reclamante e incrementaría los gastos asociados al arbitraje.

En vista de lo anterior, <u>el 7 de octubre de 2022, el recurrido solicitó una audiencia con el Árbitro para que considerada el *Laudo*</u>[12]. El 10 de octubre de 2022, la AAA transmitió una orden del Árbitro para que el señor Calice presentara reconsideración del

---

[8] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit C: *Respondent´s Motion To Dismiss* del recurso de *Petición de Certiorari*, pág. 41.

[9] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit D: *Final Order To Show Cause* del recurso de *Petición de Certiorari*, pág. 46.

[10] Notificado el 6 de octubre de 2022.

[11] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit F: *Resolution and Order As To The Motion To Dismiss* del recurso de *Petición de Certiorari*, págs. 52-55.

[12] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit G del recurso de *Petición de Certiorari*, pág. 57.

*Laudo,* concediéndole siete días calendario para presentarla y a los peticionarios cinco días para responder.

El 20 de octubre de 2022, antes de la fecha límite[13] que el Árbitro había fijado para que los peticionarios respondieran a la reconsideración del recurrido, este emitió una orden pretendiendo rescindir del *Laudo*[14].

Inconformes con lo anterior, el 21 de octubre de 2022, los peticionarios solicitaron que el Árbitro retirara su orden de rescisión del *Laudo*[15]. **Por su parte, el 2 de noviembre de 2022, el Árbitro emitió una orden rectificando su postura en cuanto a la rescisión del *Laudo***[16]. En consecuencia, el 1 de febrero de 2023[17], enmendada el 3 de abril de 2023[18], los peticionarios presentaron una petición para confirmar el *Laudo* ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (Tribunal de Distrito). Así las cosas, el 6 de febrero de 2024, el Tribunal de Distrito emitió una *Opinión y Orden* desestimando el caso sin perjuicio por falta de jurisdicción federal sobre la materia[19]. En conformidad con lo anterior, el 7 de febrero de 2024, el Tribunal de Distrito dictó *Sentencia* desestimando el caso sin perjuicio[20].

Ante ese cuadro, el 1 de marzo de 2024, los peticionarios presentaron ante el TPI la *Solicitud de Autorización para la presentación bajo sello de la Petición de Confirmación del Laudo de*

---

[13] El término de cinco días calendario vencía el 22 de octubre de 2022.

[14] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit J del recurso de *Petición de Certiorari*, pág. 78.

[15] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit K del recurso de *Petición de Certiorari*, pág. 83.

[16] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit L: *Order Relative To Claimant´s Motion For Reconsideration On Order Of Dismissal* del recurso de *Petición de Certiorari*, págs. 89-91.

[17] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit M: *Petition For Confirmation Of Arbitration Award* del recurso de *Petición de Certiorari*, págs. 93-101.

[18] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit N: *Amended Petition For Confirmation Of Arbitration Award* del recurso de *Petición de Certiorari*, págs. 103-115.

[19] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit O: *Opinion and Order* del recurso de *Petición de Certiorari*, págs. 117-133.

[20] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje*, Exhibit P: *Judgment* del recurso de *Petición de Certiorari*, pág. 135.

*Arbitraje y sus Anejos* ante el TPI[21] (Petición de Confirmación del Laudo). Tras el recurrido ser emplazado y pasado el término para que respondiera a la solicitud, el 15 de mayo de 2024, los peticionarios presentaron una *Moción Solicitando que se Declare la Petición Sometida sin Oposición y se conceda el Remedio Solicitado*[22].

No obstante, el 24 de mayo de 2024, el TPI dictó *Sentencia*[23] en la cual determinó que carecía de jurisdicción para atender la *Petición de Confirmación del Laudo,* toda vez que los peticionarios habían presentado dicho caso en el foro federal. Igualmente, el foro recurrido concluyó que: *"[n]o encontramos derecho, ni la parte nos puso en posición de conocer, derecho que provea que al presentar en un foro incorrecto se interrumpe el término que establece el Artículo 21 de la Ley de Arbitraje"*[24].

Oportunamente, el 3 de junio de 2024, los peticionarios presentaron una *Solicitud de Reconsideración*[25], donde adujeron que existía jurisprudencia contundente que establecía que:

(1) el TPI tiene jurisdicción concurrente con el foro federal para atender la Petición *de Confirmación del Laudo* bajo la Sección 9 de la Ley Federal de Arbitraje[26] (FAA por sus siglas en inglés) y

(2) haber presentado el caso en el foro federal interrumpió el término de un año para presentar la *Petición de Confirmación del Laudo* bajo el Artículo 21 de la "Ley de Arbitraje Comercial en Puerto Rico", *infra.*

Presentada la *Solicitud de Reconsideración,* el señor Calice compareció por primera vez el 25 de junio de 2024 solicitando prórroga para responder la solicitud[27]. Tras la concesión de un total de tres (3) prórrogas adicionales[28], el 24 de agosto de 2024 el

---

[21] Véase, Apéndice titulado *Solicitud de Autorización para la presentación bajo sello de la Petición de Confirmación de Laudo de Arbitraje y sus Anejos,* pág. 136-139.
[22] Véase, Apéndice titulado *Solicitud de Autorización para la presentación bajo sello de la Petición de Confirmación de Laudo de Arbitraje y sus Anejos,* pág. 136-139.
[23] Véase, Apéndice titulado *Sentencia,* págs. 155-157.
[24] *Íd.*, pág. 157.
[25] Véase, Apéndice titulado *Solicitud de Reconsideración,* págs. 158-170.
[26] 9 USC sec. 1 *et seq.*
[27] Véase, Apéndice titulado *Solicitud de Prórroga,* pág. 171.
[28] Véase, Apéndice titulado *Solicitud de Prórroga,* pág. 171; *Solicitud de Prórroga Adicional,* pág. 175 y *Solicitud de Prórroga Final,* pág. 177.

recurrido presentó *Motion to Dismiss The Petition and Response to Reconsideration*[29] (Motion to Dismiss), basado en la Regla 10.2(5) de Procedimiento Civil[30] por dejar de exponer una reclamación que justifique la concesión de un remedio. En la moción, el señor Calice arguyó que el TPI tenía jurisdicción para atender la *Petición de Confirmación del Laudo,* sin embargo, nada expresó sobre la existencia de jurisdicción bajo la FAA, *supra,* o el asunto de la prescripción. El 28 de agosto de 2024, cuatro (4) días luego de que el recurrido presentara la moción, el TPI emitió una *Resolución,* denegando la *Solicitud de Reconsideración* presentada por los peticionarios.

Insatisfechos, el 27 de septiembre de 2024, los peticionarios acudieron ante nos mediante el presente recurso y esbozaron los siguientes señalamientos de error:

> **Primer Error**: Erró el TPI al no reconocer su jurisdicción concurrente con el foro federal para atender una petición de confirmación de un laudo de arbitraje bajo la Sección 9 del FAA, 9 U.S.C. § 9, en contravención a lo dispuesto por el Tribunal Supremo en *World Films v Paramount Pict. Corp.*, 125 DPR 352 (1990) (aplicando *Southland Corp. v. Keating,* 465 U.S. 1, 12 (1984)).

> **Segundo Error**: Erró el TPI al concluir que la presentación de la *Petición de Confirmación* del laudo oportunamente en el Caso Federal no interrumpió el término prescriptivo de un (1) año de la LAPR y del FAA, independientemente de haberse encontrado el foro federal sin jurisdicción sobre la materia, en contravención a lo dispuesto claramente por el Tribunal Supremo en *Durán Cepeda v. Morales Lebrón,* 112 DPR 623, 630 (1982), reiterado en *Ross Valedón v. Hosp. Dr. Susoni Health Comm. Servs., Corp.,* ---DPR ---, 2024 TSPR 10, a la pág. 17 (7 de febrero de 2024).

> **Tercer Error**: Erró el TPI y violó el debido proceso de ley, en la medida en que hubiese negado la *Solicitud de Reconsideración* en base a los argumentos del *Motion to Dismiss*, traído bajo la Regla 10.2(5) de Procedimiento Civil, aunque caracterizado indebidamente como "oposición", sin primero determinarse con jurisdicción para atender los méritos de la *Petición* y sin conceder a los Peticionarios oportunidad de responder a la moción, cuyos argumentos son improcedentes en derecho.

---

[29] Véase, Apéndice titulado *Calice´s Motion to Dismiss the Petition and Response to Reconsideration,* pág. 180-191.
[30] 32 LPRA Ap. V, R. 10.2 (5).

Mediante *Resolución* emitida el 3 de octubre de 2024[31], concedimos a la parte recurrida un término de diez (10) días para expresarse en torno a la expedición del auto de *certiorari*. Transcurrido en exceso dicho término, sin que el recurrido se expresara, damos por perfeccionado el recurso ante nuestra consideración y procedemos a resolver sin el beneficio de su comparecencia.

**II.**

-**A**-

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[32] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[33]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[34]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico (TSPR) ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[35].

---

[31] Notificada el 4 de octubre de 2024.
[32] 32 LPRA Ap. V, R. 52.1.
[33] 4 LPRA Ap. XXII-B, R.40.
[34] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[35] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[36], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de certiorari, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

-**B**-

El concepto "jurisdicción" se refiere al poder o autoridad que ostenta un tribunal para considerar y decidir casos o controversias[37]. Como norma general, en nuestro ordenamiento jurídico, los tribunales federales y los tribunales estatales tienen jurisdicción concurrente para atender las controversias sobre derecho federal[38]. De otra parte, el Tribunal Supremo de Estados Unidos ha señalado que los tribunales estatales pueden asumir jurisdicción sobre la materia, en una causa de acción federal, salvo cuando exista legislación federal que disponga lo contrario o cuando exista una total incompatibilidad entre el pleito federal y su

---

[36] *García v. Padró*, 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).
[37] *Gearheart v. Haskell*, 87 D.P.R. 57, 61 (1963).
[38] *S.L.G. Semidey Vázquez v. ASIFAL*, 177 DPR 657 (2009).

adjudicación en los tribunales estatales[39]. Así pues, los tribunales estatales carecen de jurisdicción sobre algún asunto federal únicamente cuando el Congreso de Estados Unidos expresamente disponga esa exclusividad jurisdiccional, o cuando sea clara la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal[40]. En resumen, "[l]a jurisdicción federal exclusiva es un asunto en extremo excepcional"[41].

-**C**-

Nuestro más Alto Foro ha expresado que en nuestra jurisdicción se favorece la utilización del arbitraje para resolver disputas de carácter obrero-patronal[42]. Ello, pues el arbitraje constituye un trámite rápido, cómodo, menos costoso y técnico para resolver controversias[43]. Así, este proceso resulta en el método idóneo para resolver aquellas disputas que surgen de la aplicación e interpretación de los convenios colectivos y, por consiguiente, es un vehículo adecuado para promulgar la paz industrial[44]. Es importante puntualizar que "un acuerdo en un convenio colectivo para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro sustituto a los tribunales de justicia"[45]. De esta forma, los laudos de arbitraje "ocupa[n] una posición muy similar a la de una sentencia o decreto judicial"[46]. Ciertamente, la interpretación de los laudos producto de este proceso merecerán gran deferencia[47].

En la esfera federal, el proceso de arbitraje está regulado por la FAA, *supra*. La misma aplica a contratos en el comercio interestatal y establece que las cláusulas de arbitraje en esos

---

[39] *Howlett v. Ros e*, 496 US 356 (1990).
[40] *Cintrón v. Díaz*, 159 DPR 314 (2003).
[41] *Íd.*
[42] *AAA v. UIA*, 199 DPR 638, 649 (2018).
[43] *Pagán v. Fund. Hosp. Dr. Pila*, 114 DPR 224, 231 (1983).
[44] *Martínez Rodríguez v. A.E.E.*, 133 DPR 986, 995 (1993).
[45] *HIETEL v. PRTC*, 182 DPR 451, 456 (2011).
[46] *Ríos v. Puerto Rico Cement Corp.*, 66 DPR 470, 477 (1946).
[47] *Aut. Puertos v. HEO*, 186 DPR 417, 424 (2012).

contratos son válidas, irrevocables y mandatorias[48]. **La FAA, *supra*, aplica tanto en los tribunales federales como en los estatales**[49]. No obstante, cuando las partes acuerdan que el arbitraje se regirá por la ley de un estado en particular, la FAA, *supra*, no ocupará el campo y podrá aplicarse la escogida ley de arbitraje estatal[50]. Sin embargo, en todo caso el estatuto requiere que los tribunales hagan cumplir todo acuerdo de arbitraje, según negociado por las partes y conforme a sus términos, como si se tratase de cualquier otra cláusula del contrato[51].

Pertinente a la controversia planteada, la Sección 9 de la FAA, *supra*, dispone lo siguiente:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then **at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award**, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. **If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.** Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court[52].

Al igual que en la jurisdicción federal, en Puerto Rico existe una fuerte política que favorece el arbitraje como método de solución de disputas[53]. El fundamento de esta política pública se sostiene

---

[48] *World Films v. Paramount Pictures Corp.*, 125 DPR 352,357 (1990), citando a *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 US 1, 24 (1983).

[49] *World Films v. Paramount Pictures Corp.*, *supra*, a la pág. 358, citando a *Southland Corp. v. Keating*, 465 US 1, 16 (1984).

[50] *World Films v. Paramount Pictures Corp.*, *supra*, citando a *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 485 US 976 (1988).

[51] *World Films v. Paramount Pictures Corp.*, *supra*, a la pág. 359 citando a *Prima Paint v. Flood & Conklin*, 388 US 395 (1967).

[52] 9 USC sec. 9.

[53] *Municipio Mayagüez v. Lebrón*, 167 DPR 713, 721 (2006).

sobre el interés del Estado de facilitar la solución de disputas por vías más rápidas, flexibles y menos onerosas para las partes en el proceso judicial, ya que se eliminan las dilaciones causadas por el alto grado de tecnicismo de los procedimientos en los tribunales[54].

Nuestro ordenamiento legal reconoce y promueve los acuerdos de arbitraje a través de la Ley Núm. 376 del 8 de mayo de 1951, mejor conocida como la Ley de Arbitraje de Puerto Rico (Ley Núm. 376)[55]. El precitado estatuto dispone que:

> [d]os o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de este capítulo, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable, salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio[56].

Por otra parte, el Artículo 21 de la Ley Núm. 376, *supra,* establece que:

> **[e]n cualquier fecha dentro del año siguiente al laudo a menos que las partes de común acuerdo prorroguen el término por escrito, cualquiera de las partes podrá solicitar del tribunal una orden confirmando el mismo, y el tribunal accederá a ello, a menos que dicho laudo se revocare modificare o corrigiere, según se dispone en los Artículos 23 y 24.** La notificación por escrito de la solicitud, se diligenciará a la parte contraria o a su abogado con cinco (5) días de antelación a la vista de la misma. La validez de un laudo que de otro modo fuere válido no quedará afectada por el hecho de no radicarse moción alguna para su confirmación[57].

De igual forma, el estatuto precisa que al TPI disponer del asunto planteado y expedir una orden sobre el particular, se dictará una sentencia de conformidad que "tendrá la misma fuerza y vigor en todo respecto y estará sujeta a las mismas disposiciones

---

[54] *Vélez v. Serv. Legales de P. R., Inc.*, 144 DPR 673, 682 (1998).
[55] 32 LPRA sec. 3201 *et seq.*; La Ley Núm. 174-2024 derogó la Ley Núm. 376 del 8 de mayo de 1951, sin embargo, se citan los artículos de esta al estar vigentes al momento que sucedieron los hechos.
[56] *Íd.*
[57] 32 L.P.R.A. sec. 3221.

de la ley que se refieran a sentencias en una acción civil"[58] y puede ser recurrida mediante el recurso de certiorari.

**III.**

Por estar íntimamente relacionados, discutiremos los señalamientos de error uno y dos de forma conjunta. Veamos.

Como primer error, los peticionarios alegaron que el TPI incidió al no reconocer su jurisdicción concurrente con el foro federal para atender la *Petición de Confirmación del Laudo* bajo la Sección 9 del FAA, *supra.* Asimismo, como segundo error argumentaron que el foro recurrido erró al concluir que la presentación de la *Petición de Confirmación del Laudo* oportunamente en el Caso Federal no interrumpió el término prescriptivo de un (1) año del Artículo 21 de la Ley Núm. 376, *supra,* y la Sección 9 de la FAA, *supra,* independientemente de haberse encontrado el foro federal sin jurisdicción sobre la materia.

Cabe destacar que, es norma reiterada que los tribunales de Puerto Rico son tribunales de jurisdicción general, lo cual implica que de ordinario pueden atender casos sobre toda clase de controversia justiciable que surja dentro de la extensión territorial, al amparo de las leyes estatales[59]. Asimismo, los tribunales de Puerto Rico, como regla general, tienen jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales[60]. Por el contrario, la jurisdicción exclusiva de los tribunales federales sobre algún asunto de derecho federal procede únicamente cuando el Congreso de Estados Unidos dispone expresamente para ello, o cuando ha sido declarada así por el Tribunal Supremo de Estados Unidos en situaciones en que la

---

[58] Artículo 27 de la Ley Núm. 376, *supra; Vivoni Farage v. Ortiz Carro,* 179 DPR 990, 1007 (2010).
[59] *Rodríguez v. Overseas Military,* 160 DPR 270, 277 (2003).
[60] *Íd.*

intención del Congreso, de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal, es patentemente clara[61].

Nuestro Tribunal Supremo ha expresado que la jurisdicción federal exclusiva es un asunto en extremo excepcional[62]. Ausente una legislación federal que ocupe el campo, y ausente también alguna decisión del Tribunal Supremo de Estados Unidos que disponga concretamente que la jurisdicción federal es exclusiva, es claro que, conforme al fundamental principio federal sobre la jurisdicción concurrente, los tribunales de Puerto Rico tendrán jurisdicción[63].

Por otra parte, según surge del derecho que antecede, la FAA aplica tanto en los tribunales federales como en los estatales[64]. El Tribunal Supremo de Estados Unidos ha establecido reiteradamente que la FAA crea un cuerpo de derecho sustantivo federal que aplica de forma equivalente en los tribunales estatales como en los federales[65]. De igual manera, así también lo ha reconocido el TSPR, específicamente en *World Films V. Paramount Pict. Corp., supra.* En el precitado caso, el TSPR revocó la doctrina bajo *Walborg Corp. v. Tribunal Superior*, 104 DPR 184, 191 (1975), donde se dispuso que la FAA, *supra*, se aplicaba a los tribunales federales y, por ende, los tribunales estatales no estaban obligados a aplicarla[66].

En el caso de marras, ni el Congreso de Estados Unidos ni el Tribunal Supremo de Estados Unidos han dispuesto expresamente que la FAA, *supra*, es de jurisdicción exclusiva de los tribunales federales. Al contrario, la propia jurisprudencia[67] ha dejado claro que la FAA, *supra*, aplica tanto en los tribunales federales como en

---

[61] *Íd.*, a las págs. 277-278.
[62] *Cintrón v. Díaz, supra*, a la pág. 319.
[63] *Íd.*, a las págs. 320-321.
[64] *World Films v. Paramount Pictures Corp., supra*, a la pág. 358, citando a *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984).
[65] *Íd.*, citando a *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 US 1, 25 (1983).
[66] *World Films v. Paramount Pictures Corp., supra*, a la pág. 354.
[67] *Íd*; *Southland Corp. v. Keating, supra*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp, supra.*

los estatales. Conforme con esos principios, colegimos que en el caso de autos había jurisdicción concurrente entre el tribunal federal y el estatal. Por lo cual, el primer error fue cometido.

Referente al segundo error, el TPI incidió al concluir que la presentación de la *Petición de Confirmación del Laudo* no interrumpió el término prescriptivo de un (1) año del Artículo 21 de la Ley Núm. 376, *supra,* y la Sección 9 de la FAA, *supra,* independientemente de haberse encontrado el foro federal sin jurisdicción sobre la materia.

Pertinente a la controversia planteada, la Sección 9 de la FAA, *supra,* dispone lo siguiente:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then **at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award,** and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title[68].
> […].

De igual forma, el Artículo 21 de la Ley Núm. 376, *supra,* establece que:

> **[e]n cualquier fecha dentro del año siguiente al laudo a menos que las partes de común acuerdo prorroguen el término por escrito, cualquiera de las partes podrá solicitar del tribunal una orden confirmando el mismo,** y el tribunal accederá a ello, a menos que dicho laudo se revocare modificare o corrigiere, según se dispone en los Artículos 23 y 24[69].
> […].

Como pudimos ver en el tracto procesal, el 5 de octubre de 2022, se emitió el Laudo final el cual desestima con perjuicio las reclamaciones presentadas por el recurrido. Posteriormente, el **2 de noviembre de 2022, el Árbitro emitió una orden rectificando su postura en cuanto a la rescisión del *Laudo***[70]. Mientras que, el 1

---

[68] 9 USC sec. 9., *supra.*

[69] 32 LPRA sec. 3221, *supra.*

[70] Véase, Apéndice titulado *Petición de Confirmación de Laudo de Arbitraje,* Exhibit L: *Order Relative To Claimant´s Motion For Reconsideration On Order Of Dismissal* del recurso de *Petición de Certiorari,* págs. 89-91.

de febrero de 2023, los peticionarios presentaron una petición para confirmar el *Laudo* ante el Tribunal de Distrito. A tenor con lo anterior, queda constatado que los peticionarios presentaron la confirmación de Laudo original dentro del término de un (1) año dispuesto por la Sección 9 de la FAA, *supra* y el Artículo 21 de la Ley Núm. 376, *supra,* pues habían transcurrido ciento diecinueve (119) días desde que se emitió el Laudo Final y noventa y tres (93) días desde que el Árbitro modificó el Laudo Final.

Al los peticionarios presentar la confirmación del Laudo dentro del año ante el Tribunal de Distrito, el término prescriptivo quedó interrumpido y, por lo tanto, podían presentar la *Petición de Confirmación del Laudo* ante el TPI. Recordemos la norma reiterada por nuestro Tribunal Supremo que, una reclamación judicial interrumpe el término prescriptivo, aunque se presente ante un foro sin jurisdicción[71].

El Código Civil de Puerto Rico siempre ha reconocido que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales"[72]. De igual forma, nuestro Máximo Foro ha expresado que la interrupción a través del ejercicio ante los tribunales "tiene el resultado de interrumpir y congelar el término prescriptivo si la acción se presentó oportuna y eficazmente de manera que el nuevo término iniciará cuando culmine efectivamente el proceso judicial"[73].

Constatado que la acción ante los tribunales, aunque éstos carezcan de jurisdicción o competencia, surte efecto interruptor contra la prescripción"[74], llegamos a la conclusión que, en el caso

---

[71] *Durán Cepeda v. Morales Lebrón*, 112 DPR 623, 630 (1982).

[72] Artículo 1873 del Código Civil de Puerto Rico, 31 LPRA sec. 5303. Código Civil vigente al momento de los hechos.

[73] *Durán Cepeda v. Morales Lebrón, supra*, a la pág. 630, reiterado en *Ross Valedón v. Hosp. Dr. Susoni Health Comm., Corp.,* 2024 TSPR 10, a la pág 9 (7 de febrero de 2024).

[74] *Durán Cepeda v. Morales Lebrón, supra*, a la página 627, citando a *Diez v. Green*, 32 DPR 814, (1924); L. Díez Picazo, *La Prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, págs. 111, 122; J. Puig Brutau, *Fundamentos de Derechos Civil*, Barcelona, Ed. Bosch, 1979, T. 1, Vol. 1, págs. 898-899; M. Albaladejo, *Derecho*

de autos no aplica la prescripción. Esto, debido a que, los peticionarios presentaron la petición de confirmación del *Laudo* original en el Tribunal de Distrito dentro del término de (1) un año de haberse notificado el *Laudo*. Al término quedar paralizado, los peticionarios se encontraban en posición de poder presentar la *Petición de Confirmación del Laudo* ante el TPI. En efecto, eso fue lo que hicieron los peticionarios al presentar la *Petición de Confirmación del Laudo* ante el TPI el 1 de marzo de 2024, a menos de un mes que el 7 de febrero de 2024 se emitiera la *Sentencia* del caso federal. Determinamos que el segundo error fue cometido.

Adjudicada la controversia sobre la improcedencia de la aplicación de la defensa de prescripción, el tercer error es innecesario de adjudicar por esta *Curia* porque ese petitorio le compete al TPI y no requiere análisis ulterior de nuestra parte.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***expedimos*** el auto de *certiorari* solicitado, ***revocamos*** la *Sentencia* recurrida y <u>devolvemos el caso al TPI para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.</u>

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

*Civil*, 3ra ed., Barcelona, Ed. Bosch, 1975, T. 1, Vol. 2, pág. 472; M. Albaladejo, *Comentario al Artículo 1973 del Código Civil*, Rev. de Der. Privado, 1977, págs. 987-994; J. L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1974, pág. 301; contra: Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 959 et seq.