ALFREDO LUIS RÍOS, representado por la JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionario, *v.* PUERTO RICO CEMENT CORPORATION y LA UNIÓN DE CANTEROS, OPERADORES Y DEMÁS EMPLEADOS DE LA INDUSTRIA DEL CEMENTO, demandados.

Núm. 1.—*Sometido:* Julio 5, 1946. *Resuelto:* Julio 24, 1946.

*Hon. Procurador General E. Campos del Toro y Luis Venegas Cortés,* abogado especial éste del Procurador General, abogados ambos del peticionario; *Víctor M. Bosch y Francisco Colón Gordiany,* abogados de la Unión de Canteros, etc., demandada; *Enrique Cornier Martínez,* como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El peticionario, Alfredo Luis Ríos, estuvo durante más de cuatro años trabajando como empleado en la planta de la Puerto Rico Cement Corporation, siendo durante todo ese tiempo miembro de la "Unión de Canteros, Operadores y demás Empleados de la Industria del Cemento", organizada el 20 de abril de 1941. El 21 de noviembre de 1945, el peticionario fué expulsado de la Unión, según se alega, porque siendo Secretario de la misma se opuso a la entrega de la suma de $500 de los fondos de la Unión, hecha por el Presidente, sin previa autorización de los miembros de la organización, a la Confederación General de Trabajadores de Puerto Rico, "sector Colón Gordiany".

Decretada la expulsión del peticionario, la Unión requirió a la Puerto Rico Cement Corporation para que procediera a despedir de su empleo al peticionario, de conformidad con las estipulaciones del convenio colectivo entre la Unión y la compañía, celebrado el 12 de noviembre de 1945, por virtud de las cuales se convino que "todos los empleados que fueren miembros de la Unión en la fecha en que se firme este convenio, y todos los empleados nuevos mantendrán su condición de miembros de la Unión como condición de empleo, durante la vigencia de este convenio". (Sección 5.) La Puerto Rico Cement Corporation notificó al peticionario que lo suspendería de empleo y sueldo si no apelaba oportunamente para ante la Comisión de Quejas y Agravios establecida por el convenio colectivo, y que si así lo hacía, podría continuar en su empleo hasta que la Comisión dictara su decisión. En diciembre 12 de 1945 el peticionario apeló. La Comisión de Quejas y Agravios, constituída por dos delegados de la Unión, dos representantes del patrono y un delegado del Comisionado del Trabajo, después de celebrar audiencias a las que asistieron todas las partes interesadas, el 21 de enero de 1946 rindió el siguiente laudo arbitral:

"Lo siguiente fué aprobado por la mayoría que subscribe al calce:

"TERCERO: Entendemos que al renunciar a sus derechos, a pesar de las oportunas aclaraciones que a la parte querellante le hiciera el Comité, en más de una ocasión, equivalía virtualmente a no presentar caso alguno y por el contrario le concedía a la parte querellada ventaja ilimitada para desvirtuar los cargos que no se vieron, y, desde luego, no se probaron. De todo lo cual se infiere que por la forma peculiar en que el caso fué conducido por la parte querellante, procede la RESOLUCIÓN, aprobada por mayoría, *revocando* la expulsión del señor Alfredo Luis Ríos como quemador de la Puerto Rico Cement Corporation. Se acordó, además, que la minoría—en este caso, los dos miembros de la Unión—explicaría su voto por escrito como efectivamente lo hizo, y que lo mismo harían los dos representantes de la Compañía en calidad de tales, y el quinto miembro como tal.

"Aprobada hoy lunes 21 de enero de 1946 en San Juan, Puerto Rico.

"Comité de Quejas y Agravios de la Puerto Rico Cement Corporation y la Unión de Canteros, Operadores y Demás Empleados de la Industria del Cemento.

"A favor de la no expulsión:
"1. José R. Benítez (fdo.)
"2. Luis V. Rodríguez (fdo.)
"3. Julio Machuca (fdo.)

"En contra:
"1. Francisco Ortega (fdo.)
"2. Julio Amaro (fdo.)"

En la petición de *injunction* radicada ante este Tribunal a virtud de las disposiciones del inciso 2(c), art. 9, Ley núm. 130 de 8 de mayo, 1945 (pág. 407), enmendada por la núm. 6 de 7 de marzo de 1946 ((1) pág. 19), el peticionario alega que la Unión demandada, en violación del fallo dictado por la Comisión de Quejas y Agravios, de los términos del convenio colectivo y de la política pública enunciada en las mencionadas leyes, se ha negado a reponer al peticionario en su matrícula y ha ratificado su expulsión por un nuevo acuerdo adoptado el 22 de enero de 1946, requiriendo del patrono la inmediata suspensión del peticionario como empleado de la planta de cemento; que el patrono demandado, actuando a requerimiento y por instigación de la Unión, separó de empleo y sueldo al peticionario el 28 de enero de 1946 y se ha negado y se niega a reponerle en su empleo; que la Unión y el patrono se han combinado para privar al peticionario de su derecho a ganarse la vida mediante su trabajo y para privarlo de sus derechos de propiedad derivados del contrato colectivo; que las actuaciones de los demandados causan daños irreparables al peticionario, quien por carecer de otro recurso legal adecuado solicita se dicte a su favor una sentencia de injunction por la cual se ordene (1) que los demandados se abstengan de violar o de continuar violando el fallo rendido por la Comisión de Quejas y Agravios; (2) que el patrono reponga inmediatamente al peticionario en su em-

pleo y le pague los salarios que dejó de devengar mientras estuvo suspendido de empleo y sueldo; y (3) que se ordene la inmediata reposición del peticionario en la matrícula de la Unión.

La Puerto Rico Cement Corporation contestó la demanda alegando en substancia que no pudo dar cumplimiento al laudo de la Comisión de Quejas y Agravios por haberse negado la Unión a admitir al peticionario nuevamente a su seno; que de haber efectuado la reposición del peticionario, la corporación demandada hubiera incurrido en una violación del artículo 5 del convenio colectivo, que dispone que todos sus empleados deberán mantener su condición de miembros de la Unión como condición de empleo; y que la corporación está dispuesta a reponer al peticionario en su empleo tan pronto tal acción no apareje una violación del contrato colectivo.

La Unión demandada interpuso como primera defensa que esta Corte Suprema carece de jurisdicción para conocer de este asunto en primera instancia, por no haberse agotado los recursos ordinarios que conceden las leyes vigentes. Sostiene la Unión demandada, que es la Junta de Relaciones del Trabajo, creada por la Ley de Relaciones del Trabajo de Puerto Rico (Ley núm. 130 de 8 de mayo de 1945, enmendada en 7 de marzo de 1946), la que tiene jurisdicción para conocer en primera instancia de todos los conflictos y problemas que a diario surgen entre obreros y patronos; y que la intención del legislador al crear este organismo fué la de que el mismo entendería en todos esos asuntos en primera instancia.

La cuestión jurisdiccional planteada por la Unión demandada carece de méritos. Veamos.

El contrato colectivo de 12 de noviembre de 1945 obliga a los empleados de la corporación que fueren miembros de la Unión a mantener esa condición, como requisito o condición de empleo, durante la vigencia del contrato. La com-

pañía se obliga a emplear solamente afiliados a la Unión en los trabajos especificados en el convenio; y se compromete, además, a suspender de empleo y sueldo a cualquier empleado que dejare de ingresar en la Unión dentro del término especificado en el párrafo VI del contrato, cuando la Unión así lo solicite por escrito.

Por el artículo 11 del mencionado contrato colectivo se establece una Comisión de Quejas y Agravios compuesta de dos representantes de la Unión, dos representantes de la compañía y un quinto miembro designado por el Comisionado del Trabajo, para considerar y resolver por mayoría de votos las querellas, incidentes o cuestiones que surjan entre las partes contratantes que envuelvan actos de indisciplina o la interpretación, cumplimiento o violación del convenio. El citado artículo 11 dispone, además, lo siguiente:

"Disponiéndose, además, que en el caso de que un empleado sea dado de baja por la Unión, el empleado o la compañía podrán someter el caso al Comité de Quejas y Agravios *para su solución final*.

"*El fallo o decisión de la Comisión aprobado por mayoría de tres de sus miembros será final e inapelable* . . . Tal fallo o decisión será inmediatamente obligatorio para las partes siempre y cuando no esté en conflicto con, y no obligue a una de las partes a violar o implique la violación por ella de cualquier estatuto de Puerto Rico que no sea renunciable por contrato." (Bastardillas nuestras.)

La Junta de Relaciones del Trabajo de Puerto Rico fué creada por el artículo 3 de la citada Ley de Relaciones del Trabajo. Dicha Junta, adscrita al Departamento del Trabajo, tiene facultad (*a*) para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que se enumeran en el artículo 8; (*b*) para llevar a cabo una investigación preliminar de todos los cargos y peticiones que se radiquen ante ella, a los fines de determinar si se instituyen procedimientos adicionales y se celebran audiencias; y (*c*) para obtener evidencia, expedir citaciones, examinar testigos y tomar juramentos en cualquier asunto que esté bajo investigación.

El artículo 8 de la mencionada Ley define como "Prácticas Ilícitas del Trabajo", entre otras, las siguientes:

"(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

   \*        \*        \*        \*        \*        \*        \*

"(f) Viole los términos de un convenio colectivo, *incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje,* esté o no dicho acuerdo incluído en los términos de un convenio colectivo; etc.

   \*        \*        \*        \*        \*        \*        \*

"(i) Deje de emplear o reponer a su antigua posición y de no existir ésta a otra posición sustancialmente equivalente a la anterior, a un empleado despedido en violación al artículo 8(2) (b).

   \*        \*        \*        \*        \*        \*        \*

"(2) Será práctica ilícita del trabajo el que una organización obrera, actuando individualmente o concertadamente con otros:

"(a) Viole los términos de un convenio colectivo, *incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje,* esté o no dicho acuerdo incluído en los términos de un convenio colectivo; etc.

"(b) Excluya o suspenda injustificadamente de la matrícula de una organización obrera a cualquier empleado en una unidad de negociación colectiva y en cuya representación la organización obrera haya firmado un convenio de afiliación total, o de mantenimiento de matrícula de la unión."

El artículo 9 de la Ley trata sobre la prevención de las prácticas ilícitas de trabajo y enumera los casos que podrán ser sometidos a la Junta de Relaciones del Trabajo para su acción en la forma y con el propósito determinados por la misma ley. El citado artículo 9, en su párrafo 2, inciso (c) dispone:

"(c) A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Des-

pués de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje.''

En el procedimiento incoado en el presente caso no se trata de poner en vigor o de revisar una orden de la Junta de Relaciones del Trabajo, para lo cual se confiere jurisdicción a esta Corte Suprema por el artículo 9, párrafo 2, incisos (a) y (b) de la Ley. La petición radicada por la Junta de Relaciones del Trabajo a instancia y en representación del obrero Alfredo Luis Ríos, ha sido formulada de conformidad con las disposiciones del inciso (c) del párrafo 2 del citado artículo 9, supra, y en ella se invoca la jurisdicción y facultad conferida a esta Corte para poner en vigor y hacer respetar el laudo de arbitraje dictado en 21 de enero de 1946 por el Comité de Quejas y Agravios constituído de conformidad con los términos del convenio colectivo celebrado entre la Puerto Rico Cement Corporation y la Unión.

Opinamos, y así lo resolvemos, que esta Corte tiene jurisdicción para considerar y resolver si el laudo de arbitraje dictado a favor del peticionario debe ser puesto en vigor.

■■ Un laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial. Como regla general puede ser impugnado o anulado si existe algún defecto o insuficiencia en la sumisión o en el laudo mismo que lo invalide, o cuando el procedimiento seguido se ha desviado de manera substancial y perjudicial de las reglas que gobiernan los procedimientos por y ante árbitros. Los tribunales no se inclinan fácilmente a decretar la nulidad de un laudo de arbitraje, y no deben permitir que los mismos sean impugnados a menos que contra ellos pueda levantarse una de las objeciones antes mencionadas o que se alegue y pruebe fraude o mala conducta o la comisión de un grave y

perjudicial error([1]) que equivalga a una violación del derecho a un debido procedimiento de ley.

Contra el laudo dictado a favor del peticionario no se ha hecho alegación alguna de fraude, ni tampoco de que el Comité de Quejas y Agravios se desviase en manera alguna de las reglas de procedimiento. Solamente se ha alegado que el Comité de Quejas y Agravios que lo dictara actuó sin jurisdicción, porque dicho Comité "no puede entender en los asuntos administrativos de la Unión, como lo es la expulsión de uno de sus miembros."

La alegación de que el Comité de Quejas y Agravios actuó sin jurisdicción carece de méritos. En el convenio colectivo de 12 de noviembre de 1945, denominado "colectivo" según se hace constar en el mismo, "porque es negociado y firmado por el representante de la mayoría de los trabajadores a nombre de todos sus compañeros de trabajo," se estipuló expresamente que "en el caso de que un empleado sea *dado de baja por la Unión,* el empleado o la compañía podrán someter el caso al Comité de Quejas y Agravios para su solución final."

El peticionario, al ser expulsado de la Unión, hizo uso de sus derechos bajo el convenio colectivo y recurrió al Comité de Quejas y Agravios, el cual quedó constituído de acuerdo con los términos del convenio. La Unión asistió a las audiencias celebradas por el Comité y, según alega en su contestación, "por conducto de su representación, sometió aquella prueba documental y testifical que estimó procedente y material a los méritos del caso." La Unión tuvo su "día en corte" y amplia oportunidad para presentar prueba y convencer al Comité de Quejas y Agravios de que la expulsión del peticionario estaba justificada.

---

([1]) 6 C.J.S. secs. 102, 103 y 104; *Bisnovich* v. *British American Assur. Co.,* 123 A. 339; *Johns* v. *Security Ins. Co.,* 174 S.E. 215; *Larson* v. *Nygaard,* 180 N.W. 1002; *Arundel Corp.* v. *U.S.,* 79 Ct. Cl. 343.

El laudo rendido en este caso es válido y tanto la Unión demandada como la Puerto Rico Cement Corporation están obligadas por los términos expresos del convenio colectivo a acatarlo.

■ Se ha alegado que la Unión demandada no está obligada a reponer al peticionario en su matrícula porque el Comité de Quejas y Agravios se limitó en su laudo a revocar la expulsión de Alfredo Luis Ríos como quemador de la Puerto Rico Cement Corporation y no ordenó expresamente su reposición en la matrícula de la Unión. La alegación carece, a nuestro juicio, de méritos y debe ser descartada como un mero subterfugio para evadir el cumplimiento de un laudo que es tan obligatorio para la Unión como lo es para el patrono.

La Puerto Rico Cement Corporation no actuó por su propia iniciativa, ni tampoco injustificadamente, cuando suspendió de empleo y sueldo al peticionario. La expulsión del peticionario del seno de la Unión obligó a la Corporación a suspenderlo en su empleo, por ser condición expresa del convenio colectivo que todos los empleados de la planta de cemento "mantendrán su condición de miembros de la Unión como condición de empleo." La revocación de la suspensión de Alfredo Luis Ríos como quemador de la Puerto Rico Cement Corporation es un reconocimiento implícito de que su expulsión de la matrícula de la Unión fué injustificada; y la orden para su reposición en su empleo conlleva la de su reposición en la matrícula de la Unión, toda vez que de acuerdo con los términos del convenio colectivo es condición esencial para poder trabajar en la planta de cemento que el obrero esté afiliado a la Unión.

La Puerto Rico Cement Corporation después de conocer el laudo emitido en enero 21 de 1946, se negó a acatarlo y el 28 del mismo mes y año separó de empleo y sueldo al peticionario. Habiendo optado por no cumplir el laudo y acatar el acuerdo de 22 de enero de 1946, por el cual la

Unión ratificó la expulsión del peticionario y exigió que se le suspendiese de empleo y sueldo, la corporación está ahora obligada no solamente a reponer al peticionario en su empleo si que también a "pagarle los ingresos que normalmente hubiese devengado," de acuerdo con lo estipulado en el artículo 11 del convenio colectivo.

*Por las razones expuestas procede declarar con lugar la petición y dictar sentencia en los términos siguientes:*

*1. Ordenando a la Puerto Rico Cement Corporation, la inmediata reposición del peticionario en el empleo que antes ocupaba en la planta de cemento, debiendo pagarle a dicho peticionario los jornales que éste hubiese devengado desde el 28 de enero de 1946 hasta la fecha en que sea repuesto en su empleo.*

*2. Ordenando a la Unión obrera demandada y a sus directores, funcionarios y miembros la inmediata reposición del peticionario Alfredo Luis Ríos en la matrícula de la Unión.*