Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| UAW-UNIÓN DE EMPLEADOS DE ASDA, LOCAL 4004-UAW | | Revisión Judicial Procedente de la Comisión Apelativa del Servicio Público |
|---|---|---|
| Recurrida | KLRA202500221 | Caso Núm.: AQ-23-3263 |
| v. | | Sobre: Clasificación de Puestos – PCRU (Haydee Rosario Ríos) |
| ADMINISTRACIÓN DE SERVICIOS Y DESARROLLO AGROPECUARIO (ASDA) | | Árbitra: |
| Recurrente | | M. González Peña |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2025.

El 15 de abril de 2025, la Administración para el Desarrollo de Empresas Agropecuarias (ADEA), antes Administración de Servicios y Desarrollo Agropecuario (en adelante, ASDA o parte recurrente) compareció ante este Tribunal de Apelaciones mediante *Revisión Administrativa de Decisión de Arbitro Bajo Ley 45 de 1998 y la Ley 2 de 2010 Sobre Reapertura de un Caso Luego de Ser Final y Firme su Archivo*. En esta, nos solicita la revocación de la *Orden de Reapertura de Solicitud y Señalamiento de Vista de Arbitraje* emitida el 20 de marzo de 2025, por la Comisión Apelativa del Servicio Público (en adelante, CASP). Por virtud del aludido dictamen, la CASP ordenó la reapertura del caso y señaló vista de arbitraje para el 30 de mayo de 2025.

Estudiado el legajo apelativo, y conforme al derecho que más adelante exponemos, **confirmamos** la determinación recurrida.

Número Identificador

SEN2025 _____

I.

El 12 de junio de 2023, la Unión de Empleados de ASDA Local 4004-UAW, (en adelante, Unión de Empleados o la parte recurrida) en representación de la Sra. Haydee Rosario Ríos (señora Rosario) presentó una *Solicitud de Arbitraje de Quejas y Agravios* sobre clasificación de puesto ante la Comisión Apelativa del Servicio Público (CASP). En esencia, la señora Rosario solicitó la adjudicación de la escala salarial correspondiente, así como los salarios dejados de devengar. Alegó que el patrono incurrió en violación del convenio colectivo al clasificar su puesto de Auxiliar de Sistemas de Oficina I a Auxiliar en Sistema de Oficina conforme a los Planes de Clasificación de Puesto para el Servicio de Carrera y el Servicio de Confianza del Gobierno Central notificado el 23 de febrero de 2023. En virtud de lo anterior, solicitó la reevaluación de sus funciones con el propósito de mantener los niveles en la clase.

Tras varios trámites procesales, el 27 de junio de 2024, la Unión de Empleados presentó una *Moción Para Retiro de Querella* donde manifestó que la señora Rosario se acogió al retiro, razón por la que no tenía interés en continuar con su *Querella*. Cónsono con lo anterior, solicitó el cierre y archivo de esta. Según solicitado, el 30 de septiembre de 2024, la CASP ordenó el cierre y archivo del caso de epígrafe ante el foro arbitraje.

Así las cosas, el 17 de octubre de 2024, la CASP celebró una vista de conferencia con antelación a las vistas de arbitraje en varios casos presentados ante la CASP, incluido el caso de epígrafe. Posteriormente, el 14 de noviembre de 2024, la CASP emitió una *Resolución* en la cual reiteró que en la *Querella* de la señora Rosario se emitió una *Resolución* de cierre que fue notificada el 1 de octubre de 2024.

No obstante, el 20 de febrero de 2025, la Unión de Empleados presentó una *Moción Explicativa Para Reapertura de Querella*. En síntesis, arguyó que por error presentó el cierre de la *Querella* de la señora Rosario,

toda vez que el caso a ser retirado era el de la Sra. Aida Ayala Segarra (señora Ayala). Sostuvo que el error se debió a una malinterpretación durante el proceso de revisión de las innumerables querellas presentadas por clasificación de puestos ante la CASP. Además, enfatizó que su intención era retirar el caso de la señora Ayala, pero por inadvertencia anotó el nombre de la señora Rosario. Aclaró que, la señora Rosario tenía interés en resolver su *Querella*, por lo que solicitó la reapertura de esta.

En desacuerdo, el 28 de febrero de 2025, la ADEA presentó su *Moción en Oposición a Solicitud de Reapertura de Querella*. Mediante esta, manifestó que no procedía la solicitud de reapertura puesto que habían transcurrido todos los términos para solicitar un remedio. Entiéndase que, la *Querella* no podía ser objeto de reconsideración, pues la resolución de cierre y archivo era final y firme. Además, resaltó que todo desistimiento voluntario era con perjuicio.

Luego de examinar las posturas de las partes, el 20 de marzo de 2025, la CASP emitió una *Orden*, en la cual ordenó la reapertura de la *Querella* de epígrafe. A su vez, señaló vista de arbitraje para el 30 de mayo de 2025. Inconforme, la parte recurrente acudió ante nos mediante el recurso de epígrafe y señaló la comisión del siguiente error:

> Erró la Árbitro al interpretar el Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público permitiendo la reapertura de un caso del cual se había ordenado el cierre hacía cinco (5) meses desde que había advenido final y firme la *Resolución* de cierre.

Atendido el recurso, el 25 de abril de 2025, emitimos una *Resolución* mediante la cual le ordenamos a la parte recurrida a comparecer dentro del plazo establecido en ley para hacerlo. En cumplimiento con lo ordenado, el 2 de mayo de 2025, la Unión de Empleados presentó su *Oposición a Revisión de Orden Interlocutoria*. Al oponerse a la revisión solicitada, la parte recurrida plantea que este Tribunal de Apelaciones no tiene jurisdicción para atender la controversia, pues la LPAU dispone que la revisión judicial

procede cuando se impugnan resoluciones finales de las agencias administrativas. Sostiene que la *Orden* impugnada carecía de los requisitos de finalidad para ser atendida por este tribunal apelativo. De otra parte, alega que la ADEA no agotó los remedios administrativos, pues no presentó una moción de reconsideración dentro de veinte (20) días siguientes a la notificación de la *Orden* de reapertura. En la alternativa, señala que la reapertura de la *Querella* fue razonable y dirigida a salvaguardar los derechos sustantivos y procesales de la señora Rosario, toda vez que el cierre y archivo de la *Querella* ocurrió por error.

Así pues, con el beneficio de la comparecencia de las partes, damos por sometido el asunto, exponemos el derecho aplicable y resolvemos.

II.

A.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Asimismo, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia, que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final. 3LPRA Sec. 9672. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones

conforme a la ley y de forma razonable. Empresas Ferrer v. A.R.Pe., 172 DPR 254, 264 (2007).

Para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. Domínguez v. Caguas Expressway Motors, 148 DPR 387, 397-398 (1999) citando a Hilton Hotels. v. Junta Salario Mínimo, 74 DPR 670, 686 (1953). La misma, debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones.  Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. González Segarra et al. v. CFSE, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712 (2012), citando a Empresas Ferrer v. A.R.Pe., *supra*, a la pág. 264.

-B-

En nuestra jurisdicción se favorece la utilización del arbitraje para resolver disputas de carácter obrero-patronal. C.F.S.E. v. Unión de Médicos, 170 DPR 443, 449 (2007). Ello es así, toda vez que el arbitraje constituye un trámite rápido, cómodo, menos costoso y técnico para resolver controversias. AAA v. UIA, 199 DPR 638 (2018), citando a Pagán v. Fund. Hosp. Dr. Pila, 114 DPR 224, 231 (1983). Este proceso, resulta en el método idóneo para resolver aquellas disputas que surgen de la aplicación e

interpretación de los convenios colectivos y, por consiguiente, es un vehículo adecuado para promulgar la paz industrial. Martínez Rodríguez v. A.E.E., 133 DPR 986 (1993).

De otra parte, es menester recordar que al igual que los contratos ordinarios, a los convenios colectivos les aplican las disposiciones sobre la interpretación contractual contenidas en el Código Civil de Puerto Rico. HIETel v. PRTC, 182 DPR 451, 458 (2011). Indudablemente, estos acuerdos constituyen la ley entre las partes suscribientes, siempre y cuando no contravengan las leyes, la moral y el orden público. AAA v. UIA, *supra,* citando a Vélez v. Serv. Legales de P.R., Inc., 144 DPR 673, 682 (1998). Así pues, se ha reconocido que "cuando ambas partes, al firmar el convenio colectivo, se comprometen a someter al procedimiento de arbitraje cualquier queja y agravio que surja entre ellas, tal cláusula las obliga por igual". AAA v. UIA, *supra,* citando a C.O.P.R. v. S.P.U., 181 DPR 299 (2011).

Un acuerdo en un convenio colectivo para utilizar el arbitraje como mecanismo de resolución de controversias crea un foro sustituto a los tribunales de justicia. Condado Plaza v. Asoc. Emp. Casinos P.R., 149 DPR 347, 352 (1999); Hietel v. PRTC, *supra,* a la pág. 456. Por consiguiente, los laudos de arbitrajes ocupan una posición muy similar a la de una sentencia o decreto judicial. AAA v. UIA, *supra*, citando a Ríos v. Puerto Rico Cement Corp., 66 DPR 470, 477 (1946). Siendo ello así, cuando los foros apelativos analizan las controversias que emanan de un procedimiento de arbitraje, deben tener presente que lo más prudente es la abstención judicial, aunque esta no está vedada. C.F.S.E. v. Unión de Médicos, *supra,* a la pág. 449. En tales casos, la doctrina que gobierna la revisión judicial de los laudos de arbitraje se caracteriza por una marcada deferencia a la decisión emitida por el árbitro. Constructora Estelar v. Aut. Edif. Pub., 183 DPR 1 (2011).

-C-

Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico (Ley Núm. 45-1998), fue aprobada con el propósito de conferirles a los empleados públicos que no estén cubiertos por la Ley Núm. 130 del 8 de mayo de 1945, mejor conocida como la Ley de Relaciones del Trabajo de Puerto Rico[1], el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la mencionada ley. Depto. Educ. v. Sindicato Puertorriqueño, 168 DPR 527, 536-537 (2006).  Por virtud de dicha ley se creó el Reglamento Núm. 6385 de 28 de diciembre de 2001, intitulado *Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público* (Reglamento Núm. 6385) a los fines de establecer los procedimientos para implantar la Ley Núm.45-1998. En lo que nos atañe al caso de autos, sección 710 de (B) del Reglamento 6385 establece que, "si una de las partes, o ambas, no comparecen a la vista luego de haber sido notificadas, sin haber solicitado y conseguido aplazamiento o suspensión de la vista, el árbitro podrá proceder al cierre del caso con perjuicio".

Asimismo, la Sección 714 (g) del Reglamento 6385 dispone lo siguiente:

> En la eventualidad de que luego de comenzar el procedimiento de arbitraje las partes lleguen a un acuerdo final que resuelva la controversia sujeta a arbitraje, éstas presentarán dicho acuerdo por escrito al Árbitro, o lo harán constar para el récord durante la vista. El Árbitro emitirá una Resolución conteniendo dichos acuerdos, lo cual constituirá base suficiente para cerrar el caso con perjuicio.

De otra parte, la sección 8.5 del Reglamento Núm. 7313 de 7 de marzo de 2007, conocido como *Reglamento Procesal* de la Comisión Apelativa del Sistema de Administración de Recursos Humanos

---

[1] 29 LPRA sec. 61

(Reglamento Núm. 7313) expresa que, como norma general todo desistimiento será con perjuicio.

III.

Mediante el recurso de epígrafe, la parte recurrente nos invita a determinar que la *Orden de Reapertura de Solicitud y Señalamiento de Vista de Arbitraje* emitida el 20 de marzo de 2025, por la CASP es contraria a derecho. En su único señalamiento de error, aduce que el árbitro de la CASP incidió al interpretar el Reglamento Núm. 6385 y, por consiguiente, permitir la reapertura de un caso del cual se había ordenado el cierre hacía cinco (5) meses desde que la *Resolución* de cierre y archivo de la *Querella* había advenido final y firme. A su vez, argumenta que dicho desistimiento es con perjuicio. No tiene razón.

Hemos evaluado el lenguaje de las porciones reglamentarias citadas por la peticionaria en apoyo de sus argumentos. Estudiadas las mismas, no hemos encontrado que su texto imponga contundente un desistimiento con perjuicio de forma tal que la reapertura impugnada fuera prohibida.

La sección 710 (B) del Reglamento Núm. 6385 citada por ADEA en su escrito regula el cierre de un caso cuando una parte- o ambas- no comparecen a la vista. Ciertamente, esta no es la situación sobre la que trata el presente caso. Además, puede notarse que la misma, al incluir el vocablo "podrá", implica la facultad o potencia de hacer algo, no la obligación.[2]

Por su parte, la Sección 714 (g) del mismo reglamento aludida por la peticionaria trata del cierre con perjuicio de un caso, cuando las partes lleguen a un acuerdo final que resuelva la controversia. ADEA expone que el archivo con perjuicio de la querella de la señora Rosario respondió al acuerdo de cierre y archivo recogido en la resolución de cierre notificada a las partes el 1 de octubre de 2024, por lo que su reapertura es contraria a la

---

[2] Entre las definiciones que la Real Academia Española brinda al término "poder", se encuentra la facultad o potencia de hacer algo. https://dle.rae.es/poder.

citada sección. No obstante, su somero argumento ignora que en la *Moción Explicativa Para Reapertura de Querella* la Unión de Empleados explicó que la solicitud de cierre y archivo del caso de la señora Rosario respondió a una confusión respecto a los nombres de las empleadas. O sea, erróneamente se indicó que la señora Rosario se había jubilado y que esta tenía interés en desistir de su reclamación, cuando fue la señora Ayala quien se jubiló. Allí, la Unión de Empleados aclaró que, contrario a lo que se informó, la señora Rosario continuaba trabajando aún y le interesaba continuar con su *Querella*.

Este error, según la Unión de Empleados, respondió a una confusión de la Unión de Empleados, quienes además de representar a la señora Rosario, representaban a un sinnúmero de empleados que presentaron querellas ante la CASP a los fines de impugnar la clasificación de puestos. Por lo tanto, el acuerdo de archivo ocurrido en este caso descansó en la premisa equivocada de que la señora Rosario se había jubilado. A nuestro juicio, sostener el cierre con perjuicio de su reclamo, conllevaría castigar a la señora Rosario injustamente. En especial consideración a esto, no nos parece que mediante la decisión recurrida el organismo administrativo recurrido haya actuado irrazonable, arbitraria o ilegalmente. Quedamos convencido de ello, pues la sección 8.5 del Reglamento Núm. 7313, establece que como **norma general** todo desistimiento será con perjuicio. Entiéndase pues de su propio texto, que esta sección autoriza excepciones. Estamos convencidos de que las circunstancias particulares ante nuestra consideración justifican una excepción a la norma general.

Por ello, resolvemos que la reapertura de la *Querella* de epígrafe fue razonable y dirigida a salvaguardar los derechos sustantivos y procesales de la señora Rosario. **A su vez, colegimos que la reapertura de la *Querella* de epígrafe es pertinente y necesaria para la resolución justiciera de la**

**controversia ante nuestra consideración.** Por todo lo anterior, resolvemos que el error señalado por la ADEA no fue cometido.

IV.

Por los fundamentos antes expuestos, **confirmamos** la *Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones