Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Unión de Trabajadores de las Comunicaciones, Unidad de Seguridad Pública, CWA Local 3010<br><br>Apelada<br><br>vs.<br><br>Negociado del Sistema de Emergencias 911<br><br>Apelante | KLAN202500510 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2024CV05666<br><br>Sobre: Petición para poner en vigor laudo de arbitraje A1-21-0052 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece el Negociado de Sistema de Emergencias 9-1-1 adscrito al Departamento de Seguridad Pública de Puerto Rico (en lo sucesivo, Negociado o apelante) y nos pide que revoquemos la "Sentencia" emitida y notificada el 15 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario). Mediante el referido dictamen, el foro primario declaró con lugar la "Petición para Poner en Vigor Laudo de Arbitraje" presentada por la Unión de Trabajadores de las Comunicaciones, Unidad de Seguridad Pública, CWA Local 3010 (en lo sucesivo, Unión o apelada).

Luego de evaluar el recurso presentado por el apelante, así como la evidencia documental anejada al mismo, prescindimos de la comparecencia de la parte apelada y procedemos a resolver. Véase, Regla 7 (b)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (b)(5).

Número Identificador

SEN2025 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen apelado, por los fundamentos que expondremos a continuación.

**I.**

El 11 de marzo de 2021, la Unión presentó una "Solicitud de Arbitraje de Quejas y Agravios" en la Comisión Apelativa del Servicio Público (en adelante, CASP). La árbitro tuvo ante si la siguiente controversia: determinar si el Negociado violó el convenio colectivo y la Ley Núm. 32 del 24 de marzo de 2020 (en lo sucesivo, Ley 32-2020), al eliminar los beneficios marginales pagaderos a los integrantes de la Unión. En lo pertinente, el propósito del referido estatuto fue enmendar la Ley Núm. 26 del 29 de abril de 2017 (en adelante, Ley 26-2017), conocida como la "Ley de Cumplimiento con el Plan Fiscal", a los fines de excluir el Negociado de los recortes presupuestarios legislados en la Ley 26-2017.

La Unión argumentó que, los beneficios marginales negociados en el convenio colectivo debían ser implementados en su totalidad, en virtud de la Ley 32-2020, dado que el Negociado opera con recursos propios, por lo que no depende del Fondo General del Gobierno de Puerto Rico.

Por su parte, el Negociado arguyó que la Ley 32-2020 no esta vigente, pues fue altamente cuestionada por la Junta de Supervisión y Administración Financiera (en adelante, la Junta), por ser contraria al plan fiscal y esta entidad resolvió que la medida no podía implementarse. Incluso, añadió que luego de varias comunicaciones entre la Junta y la entonces Gobernadora, y entre la Junta y la legislatura, la Gobernadora certificó que la medida legislativa es contraria e inconsistente al plan fiscal.[1] Por

---

[1] Anejo del recurso de Apelación, pág. 16.

ende, fue la postura del Negociado que los miembros de la unidad apropiada no son acreedores de los beneficios marginales.

El 20 de julio de 2023, el CASP emitió un "Laudo de Arbitraje". La árbitro concluyó que, si bien es cierto que la aplicación de la Ley 32-2020 fue cuestionada por la Junta, no hay evidencia de que el estatuto haya sido enmendado o derogado, por lo que no hay impedimento alguno para que el Negociado pueda cumplir con los beneficios marginales negociados en el convenio colectivo. En consecuencia, ordenó al Negociado reestablecer los beneficios marginales según establecidos en el Convenio Colectivo de conformidad con la Ley 32-2020, y a pagar cualquier haber o beneficio dejado de devengar a todos los miembros de la Unidad Apropiada.

Al paso de dos años, la Unión presentó el 21 de junio de 2024 una "Petición para Poner en Vigor Laudo de Arbitraje" ante el TPI. Adujo que, luego de varios intentos de comunicación infructuosos con el Negociado y la Junta, se vio obligado a solicitar la intervención judicial para que el foro ordenase al apelado cumplir con lo resuelto por la CASP.

El Negociado presentó su "Moción en Cumplimiento de Orden y en Oposición a que se Ponga Laudo en Vigor" el 21 de marzo de 2025. En síntesis, arguyó que, el Tribunal de Primera Instancia carecía de jurisdicción para atender la petición, pues es el foro judicial federal el facultado para revisar controversias relacionadas a decisiones de la Junta, según la Puerto Rico Oversight, Management, and Economic Stability Act (en lo sucesivo, PROMESA), *infra.*

El 14 de abril de 2025, la Unión presentó "Réplica a Moción en Cumplimiento de Orden y en Oposición a que se Ponga Laudo en Vigor". Puntualizó que si la Junta, en el desempeño de su labor, determina que una legislación es incompatible con el plan

fiscal, puede ordenar al Gobierno de Puerto Rico que: 1) enmiende la legislación, o 2) justifique la inconsistencia. Añadió que, si el Gobierno incumple con dichas instrucciones, la Junta está facultada para tomar las medidas que estime necesarias, siempre y cuando sean conforme a PROMESA, incluyendo impedir su entrada en vigor o su ejecución. Sin embargo, entiende la Unión que, la autoridad que ostenta la Junta para ejecutar sus responsabilidades debe ejercerse en el foro judicial federal, según le faculta PROMESA, dado que la Junta no posee la autoridad para legislar.

El 15 de abril de 2025, el TPI emitió la "Sentencia" apelada. El foro primario dictaminó que, el laudo advino final y firme puesto que el Negociado no solicitó su revisión. En virtud de ello, reconoció que la función del TPI no es revisar la corrección del laudo emitido, sino ponerlo en vigor. En consecuencia, ordenó al Negociado a reestablecer los beneficios marginales según ordenó la CASP.

Insatisfecho con la determinación del foro primario, el Negociado recurre ante este foro apelativo intermedio mediante recurso de apelación y levanta los siguientes señalamientos de error:

*Primer Error:*

*Erró el Honorable Tribunal de Primera Instancia al ordenar que se [ejecute] el laudo emitido por la Comisión Apelativa del Servicio Público en el caso número AQ-21-0052 que impugna, interfiere, varía y deja sin efecto una determinación emitida por la Junta de Supervisión y Administración Financiera para Puerto Rico al amparo de la Ley PROMESA, en la cual se concluyó que la Ley 32-2020 es significativamente inconsistente con el Plan Fiscal certificado y el Gobierno de Puerto Rico estaba impedido de ejecutarla, asunto que cae exclusivamente bajo la jurisdicción y competencia del Tribunal Federal para el Distrito de Puerto Rico, conforme a lo dispuesto en el Título III de la Ley PROMESA y la doctrina del campo ocupado.*

*Segundo Error:*

*Erró el Honorable Tribunal de Primera Instancia al no declarar inejecutable el laudo emitido por la Comisión Apelativa del Servicio Público en el caso número AQ-21-0052 por ser contrario a derecho, al fundamentarse en una ley cuya aplicación ha sido expresamente dejada sin efecto y declarada inejecutable por la Junta de Supervisión y Administración Financiera para Puerto Rico bajo la autoridad que le confiere la Ley PROMESA, esto en ausencia de una revisión por el Tribunal Federal que es el ente con jurisdicción exclusiva y competente, siendo la determinación de la Junta de Supervisión una final y vinculante, por lo que el TPI carecía de jurisdicción para ordenar su cumplimiento.*

*Tercer Error:*

*Erró el Honorable Tribunal de Primera Instancia al [dictar] Sentencia que tiene el efecto directo de invalidar determinaciones emitidas por la Junta de Supervisión y Administración Financiera para Puerto Rico bajo la autoridad que le confiere la Ley PROMESA sin que la parte Apelada tuviera legitimación activa para ello y sin que el ente federal fuera parte del pleito.*

## II.

## A.

En nuestra jurisdicción existe una fuerte política pública a favor de la resolución de conflictos mediante métodos alternos, como la mediación y el arbitraje. *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 30 (2011). El arbitraje es un "procedimiento para resolver controversias, sometiéndolas a un árbitro o a un cuerpo de árbitros, para luego de considerar las pruebas, emitir [un] laudo". *Aquino González v. A.E.E.L.A.*, 182 DPR 1, 19 (2011), citando a I. Rivera García, <u>Diccionario de Términos Jurídicos</u>, 2da ed. Rev., Orford, Equity, 1985, a la pág. 18. Cabe señalar que, dicho mecanismo resulta ser más rápido y menos costoso que los procedimientos judiciales, a la vez que ofrece mayor flexibilidad a las partes; el mismo contribuye a promover la paz industrial. *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 682 (2006). El arbitraje viene a ser, entonces, como un sustituto del litigio judicial, en el sentido de que su fin es la adjudicación.

En consideración de lo anterior, se trata de un procedimiento mediante el cual "las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión". *Aquino González v. A.E.E.L.A.*, *supra*, a la pág. 19, citando a D. Fernández Quiñones, El arbitraje obrero-patronal, Colombia, Ed. Forum, 2000, pág. 9. En ese sentido, un laudo de arbitraje es la decisión final de un árbitro al disponer de una controversia, por lo que se entiende como la "decisión o fallo que dictan los árbitros". *VDE Corporation v. F & R Contractors*, 180 DPR 21, 45 (2010), citando a I. Rivera García, Diccionario de Términos Jurídicos, 3ra ed., San Juan, Ed. LexisNexis, 2000, pág. 144. Cabe resaltar que, a pesar de que un laudo de arbitraje no es un contrato ni una sentencia, sí comprende características de ambos. *J.R.T. v. Otis Elevator Co.*, 105 DPR 195, 199 (1976).

Finalmente, si luego de emitido un laudo una parte se niega a ejecutar lo allí resuelto, la parte afectada puede entablar la acción legal adecuada ante el foro judicial para que este ponga en vigor el laudo de arbitraje. *Ríos v. Puerto Rico Cement Corporation*, 66 DPR 470, 477 (1946).

**B.**

En virtud del poder que le otorga la Cláusula Territorial de la Constitución de Estados Unidos, Art. IV, Sec. 3, Const. EE. UU., LPRA, Tomo 1, el Congreso de Estados Unidos aprobó la Puerto Rico Oversight, Management, and Economic Stability Act, 48 USCA sec. 2101 *et seq.*, que entró en vigor el 30 de junio de 2016. Esta legislación fue creada con el propósito de establecer el proceso de reestructuración de la deuda de Puerto Rico. Para cumplir con su encomienda, instituyó la Junta de Supervisión y Administración Financiera, a quien delegó amplios poderes para ejecutar lo decretado en la pieza legislativa. 48 USCA sec. 2121-2129.

Como parte de sus funciones, la Junta, en colaboración con la Oficina de la Gobernadora de Puerto Rico, se le impuso la responsabilidad de desarrollar y aprobar un plan fiscal para Puerto Rico con el propósito de lograr responsabilidad fiscal y acceso a los mercados de capitales. 48 USCA sec. 2141 (a)(b)(1). Como corolario de dicho mandato, la Junta tiene la facultad de examinar si los proyectos de ley aprobados por nuestra Asamblea Legislativa cumplen con el aludido plan fiscal. 48 USCA sec. 2144 (a).

A tales efectos, el Congreso estatuyó en PROMESA un proceso para llevar a cabo la referida examinación. En lo pertinente, la sección sobre el curso a seguir para lograr la aprobación del plan fiscal, posee una subsección que capacita a la Junta a someter una Certificación de Inconsistencia Significativa con el Plan Fiscal y Presupuesto. 48 USCA sec. 2144 (a)(4)(B). Luego de informar a la gobernación que la pieza legislativa bajo revisión sufre de inconsistencias con el plan fiscal, la Junta debe ordenar al Gobierno de Puerto Rico que corrija o elimine la inconsistencia, o provea una explicación razonable para ella. *Id.* Si el Gobierno de Puerto Rico falla con tal directriz, la Junta puede tomar las acciones que estime necesarias para asegurar que la puesta en vigor de la ley no afecte adversamente el cumplimiento con el plan fiscal, medidas que incluyen impedir la aplicación o cumplimiento de la ley impugnada. 48 USCA sec. 2144 (a)(5).

PROMESA, a su vez, establece que la Junta puede recurrir al foro judicial para solicitar la ejecución de su autoridad. 48 USC § 2124(k).

Cónsono con lo anterior, la Corte de Apelaciones de Estados Unidos para el Primer Circuito confirmó un dictamen de la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico, mediante el cual el referido foro declaró la nulidad de la "Ley de Transformación y Flexibilidad Laboral", Ley Núm. 44-2022, al

amparo de las provisiones de PROMESA, por ser contraria al plan fiscal. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 77 F.4th 49, 56 (1st Cir. 2023). En esa occasion, el foro federal expuso que:

> *Related to the Board's power under section 204(a)(5) to prevent "the enforcement ... of the law," id., is a prohibition contained in section 108(a)(2), which applies broadly to constrain the Commonwealth's legislative power and is not limited to the context of fiscal plans. That section provides: "**Neither the Governor nor the Legislature may ... enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA]**, as determined by the Oversight Board." 48 U.S.C. § 2128(a)(2). And **section 104(k) gives teeth to the Board's aforementioned powers to intervene in the Commonwealth's legislative process, providing that "[t]he Oversight Board may seek judicial enforcement of its authority to carry out its responsibilities under [PROMESA]**." Id. (énfasis suplido).*

No obstante, el poder de la Junta para impugnar las medidas legislativas territoriales no es irrestricto, según interpretó la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico en *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 330 F. Supp. 3d 685, 701–02 (D.P.R. 2018), dictamen que posteriormente confirmó la Corte de Apelaciones de Estados Unidos para el Primer Circuito.[2]  El foro federal razonó que:

> *It is thus clear that the Oversight Board's ability to impose a rejected policy is not one to be exercised lightly. Nor is it, as a practical matter, one that is unconstrained ... **[T]he Oversight Board has not been given power to affirmatively legislate. Thus, with respect to policy measures that would require the adoption of new legislation or the repeal or modification of existing Commonwealth law, the Oversight Board has only budgetary tools and negotiations to use to elicit any necessary buy-in from the elected officials and legislators**. Id. (énfasis suplido).*

### III.

El Negociado arguye, en síntesis, que la "Sentencia" apelada es nula, inaplicable e inejecutable dado que el Tribunal de Primera Instancia carece de jurisdicción para considerar controversias

---

[2] *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,* 945 F. 3d 3 (1st Cir. 2019).

derivadas de PROMESA puesto que el foro judicial federal disfruta de jurisdicción exclusiva. Nos arguye, además, que el foro primario actuó contrario a derecho al no declarar inejecutable el laudo emitido por la CASP toda vez que la entonces Gobernadora certificó que la Ley 32-2020 era significativamente inconsistente con el plan fiscal, y ultimó que la referida legislación no estaba vigente ni podía ser aplicada por las agencias de gobierno, en armonía con la interpretación de la Junta. Adelantamos que no le asiste la razón.

Primeramente, recordemos que el "Laudo de Arbitraje" fue emitido el 20 de julio de 2023. Dicha determinación no fue impugnada en sus méritos, por lo que advino final y firme. A tales efectos, el asunto que tenía el TPI ante su consideración era meramente la petición rogando la puesta en vigor de lo resuelto por la CASP, determinación que se presume válida. No obstante, como los tribunales somos llamados a ser celosos guardianes de nuestra jurisdicción, auscultaremos brevemente los argumentos jurisdiccionales referentes a PROMESA por sus serias implicaciones. Veamos.

Si bien la Junta determinó que, debido a las inconsistencias con el plan fiscal la Ley 32-2020 no debe ser implementada, tal pronunciación no es una declaración de nulidad de la medida. Recodemos que, según han resuelto los foros federales, la Junta no tiene autoridad para legislar. Lo que sí tiene a su alcance son herramientas presupuestarias y de negociación para alcanzar la modificación del estado de derecho, al igual que la legitimación activa para recurrir a los foros judiciales para hacer valer su autoridad. A pesar de ello, no se nos presentó evidencia de que la Junta haya impugnado la Ley 32-2020 en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico.

Por ende, concluimos que el TPI no tenía ante su consideración ninguna materia exclusiva del foro federal que le

privara de jurisdicción. Aclaramos que, no estamos revisando los méritos del laudo, solo analizando si al ordenar su puesta en vigor, el TPI estuviera indebidamente usurpando la dilucidación de una controversia federal.

Resuelto el señalamiento jurisdiccional, notamos que los restantes señalamientos de error levantados por el Negociado nos invitan a examinar los méritos del laudo. Empero, como ya resolvimos, la determinación del CASP advino final y firme, por lo cual estamos vedados de revisar su contenido. En consecuencia, resolvemos que el foro primario actuó correctamente en ordenar la puesta en vigor del laudo de arbitraje.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte del presente dictamen, confirmamos la "Sentencia" apelada, emitida el 15 de abril de 2025 por el Tribunal de Primera Instancia, Sala de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones